7027.   ALABAMA GREAT SOUTHERN RAILROAD CO. *v.* PRICE.

Without passing upon the question whether the act of 1912 (Acts of 1912, pp. 46, 47) changes the rule laid down in *Jemison* v. *Southwestern Railroad,* 75 *Ga.* 444 (58 Am. R. 476), so that a recovery can be had for the killing of a dog by a railroad-train where it does not appear that the killing was wanton, malicious, or intentional, no recovery is authorized in this case, since the record contains no evidence from which

it can be more than conjectured that the dog for which damages were claimed was in fact killed by the train.

DECIDED APRIL 17, 1916.

Certiorari; from Dade superior court—Judge Fite. September 23, 1915.

*Payne & Hale,* for plaintiff in error.

*W. U. Jacoway,* contra.

WADE, J. Price brought suit in a justice's court against the railroad company to recover $50 as damages for the alleged killing of a dog by the running of the locomotive and cars of the defendant. Judgment was rendered in favor of the plaintiff; the defendant sued out certiorari, and on the hearing the judge of the superior court overruled the certiorari.

It has been well settled in Georgia since the decision in the case of *Jemison* v. *Southwestern Railroad,* 75 *Ga.* 444, that a suit can not be maintained against a railroad company for the negligent killing of a dog, and that no presumption would arise against the company upon proof that a dog was killed by a railroad-train, as in cases of injury to person or property; but that the owner may maintain an action for trespass vi et armis for the wanton and malicious killing of his dog. See *Patton* v. *State,* 93 *Ga.* 111, 114 (19 S. E. 734, 24 Am. St. R. 732); *Graham* v. *Smith,* 100 *Ga.* 434 (28 S. E. 225; 40 L. R. A. 503, 62 Am. St. R. 323); *Strong* v. *Georgia Ry. & Electric Co.,* 118 *Ga.* 515 (45 S. E. 366); *Columbus Railroad Co.* v. *Woolfolk,* 128 *Ga.* 631, 632 (58 S. E. 152, 10 L. R. A. (N. S.) 1136, 119 Am. St. R. 404); *Southern Railway Co.* v. *Keel,* 7 *Ga. App.* 244 (66 S. E. 627); *Gaddis* v. *Southern Railway Co.,* 9 *Ga. App.* 272 (71 S. E. 7); *Seaboard Air-Line Railway* v. *Parrish,* 16 *Ga. App.* 254 (85 S. E. 200). How far the act of 1912 (Acts of 1912, pp. 46, 47), which provides that "all dogs are hereby made personal property and shall be given in and taxed as other property of this State is given in and taxed," may affect the previous rulings of the Supreme Court touching the right to recover for the negligent killing of a dog by the train of a railroad company, and the further question whether upon proof of the killing by the railroad company a presumption as to negligence would arise, as in cases of injury to person or property, need not be considered in the determination of this case; as was likewise true in the case of *Seaboard Air-Line Railway* v. *Parrish,* supra. If we concede, for the purposes of this case only, that one whose dog was

killed by a railroad-train would have the same right to recover damages that he would have to recover for the like killing of a horse, it is still apparent from an inspection of the record that no right of recovery was shown.

In *Southern Railway Co.* v. *Keel,* supra, this court held: "There being evidence that, though the dog of the plaintiff was upon the railroad-track for about a minute before it was struck by the train, and was in full view of the engineer for half a mile, the engineer continued the operation of the train at full speed, without sounding any alarm or making any other effort to prevent killing the dog, the jury was authorized to find that the killing was wanton or intentional. The verdict is, therefore, not contrary to law." In *Seaboard Air-Line Railway* v. *Parrish,* supra, this court said: "There was evidence that though the plaintiff's dog had been standing on the railroad-track near the crossing for 'about ten minutes before the train passed, and the railroad is straight,' 'the train did not slack up; it did not slow up except for the crossing; the train did not blow for the dog, it only blew at the crossing;' and that the engineer could have seen the dog. From this evidence the jury were authorized to infer that the killing of the dog was wanton and malicious; and we can not set aside a verdict with some evidence to support it. This case is controlled by the case of *Southern Railway Co.* v. *Keel,* 7 *Ga. App.* 244 (66 S. E. 627), where the facts are almost identical." It will be observed that in both cases the dog killed was upon the track, which was straight, shortly before it was struck by the train, and was in full view of the engineer, and there was no effort to slack up the train, and in one of the cases the train came at full speed, without sounding any alarm or making any effort to prevent the killing of the dog, and in the other "the train did not slack up; it did not slow up except for the crossing; the train did not blow for the dog, it only blew at the crossing." In the case we are now considering, it is true, the track was straight, and therefore presumably the engineer could have seen the dog had the animal been on the track and had the engineer been looking, but no witness testified that the dog ever in fact came upon, along, or across the track, and the uncontradicted testimony of the railroad employees shows that both the engineer and the fireman "were keeping a lookout ahead" at the time the train passed the spot where the body of the dog was afterwards found,

and neither one saw any dog at or near such place. If there were proof that the dog had in fact come to its death from violence, so that it might be legitimately inferred that the train killed it, then the failure of the engineer and the fireman to see it would rather tend to indicate negligence on their part in not discovering objects on the track and in not avoiding injury thereto, if it be conceded that a recovery could be had upon proof of mere negligence alone. However, the testimony not only fails to disclose that the dog was in fact killed by the train, but there are no facts or circumstances in proof from which it can be more than surmised that the dog died a violent death. The evidence of the plaintiff was that the dog was worth the sum of $50 sued for, but he testified, "I did not see the dog killed, and know nothing about it." Walter Simpson, another witness for the plaintiff, testified that he was in the public road opposite the railroad-crossing and saw the dog coming towards the railroad through a meadow, and also saw the train coming; that he "didn't see the dog any more for thirty minutes. When [he] came back by, [he] saw dog laying on west side of railroad, just south of crossing," and recognized it as the plaintiff's dog. Glenn Simpson testified that he saw the dog about thirty minutes before train number 2 passed, and again saw the dog thirty minutes after train number 2 had passed, on the west side of the railroad, close to the end of the ties and near the crossing, dead. He further said: "I never examined dog close, but did not notice any marks or bruises on dog." Blevins testified for the plaintiff: "I saw the dog next day after he was killed, recognized it as Will Price's dog. It was lying on west side of track south of Killian crossing, and about fifty yards north of public-road crossing. I kicked the dog over. I did not see any marks or bruises on dog. The track south of where the dog was killed was straight for about a quarter of a mile or more. I saw no blood nor hair on track nor anywhere. I think the dog is worth $50." This was substantially all the testimony in the case. One witness saw the dog coming towards the railroad-track, and thirty minutes thereafter saw its body lying on the side of the railroad-track. Another witness saw the dog thirty minutes before the train passed, and saw its body near the railroad-track thirty minutes after the train passed. One of the plaintiff's witnesses testified that he made no close examination, but he saw the body of the dog, and noticed no marks or bruises thereon;

and another witness testified that he kicked the body of the dog over, and saw no marks or bruises thereon, and saw no blood or hair on the railroad-track or anywhere.

So far as is disclosed by the evidence, there is no reason to conclude that the railroad-train killed the dog, except that it was seen approaching the railroad-track thirty minutes before the train passed, and that its dead body was thereafter discovered in close proximity to the track. If there were proof that the body of the dog was mutilated or that the bones of the carcass were broken, or had there appeared on the track any sign indicating that an object had been struck or dragged along by the train, the court might properly have inferred that the dog was killed by the running of the train; but to charge a railroad company with liability for killing an animal, where there is no direct proof of such killing and no evidence tending to establish the fact that the animal met a violent death, but, to the contrary, it appears merely that the animal was found dead, without any apparent bruise or blemish upon its body, would be going beyond all reasonable bounds. To hold that the mere discovery of the body of a dog near the track of a railroad company would authorize a recovery against the company for its killing, in case the dog had been seen alive thirty minutes before its body was there found, would establish a rule harsher than any we know, and would open the way for boundless frauds; for designing and unscrupulous persons might breed dogs of every variety,

"Both mongrel, puppy, whelp, and hound,
And curs of low degree,"

for the purpose of chloroforming or poisoning them, and might distribute their inanimate bodies along the tracks of various solvent railroads throughout the State, and possibly recover damages beyond computation, for their supposed violent destruction (if it be conceded, of course, that such damages could be recovered for mere negligent killing, not wanton or intentional). Even if it be admitted that since the passage of the act of 1912, supra, a recovery for the killing of a dog by a railroad-train can be had upon proof of negligence merely, or on account of the presumption of negligence arising from proof of the killing alone, we think, nevertheless, that the learned judge of the superior court erred in overruling the certiorari, as the undisputed testimony for the defendant

company not only tends to rebut the presumption of negligence (if any such presumption exists), but the entire evidence fails to show that the dog was in fact killed by the railroad company, and there is no testimony from which it can be more than surmised that this was perhaps the case.

All things that live must die, and so too all living things will die a natural death, unless some extraneous cause or agency intervenes, and a dog is not exempt from the operation of the universal rule. We may surmise that the particular dog we are interested in may have had some deadly poison administered to it either by accident or intention, and the poison may have destroyed its life just as it neared the railroad track, in proximity to which its body was found; or the dog may have died from "heart failure" (that comprehensive term so often used by the medical profession to account for mysterious and sudden departures from this little world), or from any one of many different natural causes; for the poetic expression, "death hath a thousand doors to let out life," applies as well to the canine as to the human race. In fact, whatever may be the legal rule, in the absence of any circumstances leading to a contrary inference, every death is assumed to be from a natural cause. As a matter of law, it has been held that "The general rule is that the question as to the cause of death is one of evidence, which is admissible under the general issue in an action for death by wrongful act." 13 Cyc. 350 (b), and cases there cited. Since no mark of violence was found on the body of the dog, and there is no other circumstance in proof from which a clear inference could be drawn that the dog was struck by the locomotive or cars of the defendant company, in order to conclude, in the absence of any further testimony, that the dog was in fact killed by the running of the train of the defendant, we would be practically compelled to hold judicially that the very atmosphere surrounding a railroad-train is as deadly as that said to emanate from the upas tree, and that a railroad company can be held liable for death supposed to have resulted solely from the pestilential breath of its locomotive.

*Judgment reversed. Russell, C. J., absent.*