## PHILLIPS *vs.* DEWALD.

1. Though a horse be sensible, very gentle, and accustomed to stand unhitched at his owner's door in a busy, noisy street, yet if he be fancy, stylish, restless and very high-strung, the jury may infer negligence from leaving him loose elsewhere in the same or another street, unattended except by the owner watching him from a distance of five or six feet.

2. When a horse attached to a buggy is, by the owner's negligence, loose in the street and moving at will, persons who see the horse thus going at large are at no fault for trying to stop or capture him, and if by their rush, throwing up of hands or other demonstrations, they frighten him and cause him to run away, invade the sidewalk and injure a person passing lawfully thereon, the owner will be responsible in damages for the injury.

3. No ground of objection to certain evidence being stated either in the motion for a new trial or in the bill of exceptions, the admissibility of the evidence is not for adjudication by this court.

October 12, 1887.

Negligence. Presumptions. Damages. Evidence. Practice in Supreme Court. Before Judge VAN EPPS. City Court of Atlanta. March Term, 1887.

Reported in the decision.

W. R. HODGSON; BROYLES & JOHNSTON, for plaintiff in error.

WEIL & BRANDT, for defendant.

BLECKLEY, Chief Justice.

In an action for a personal injury resulting from being run over by a horse, Dewald obtained a verdict against Phillips for $500; and the court refusing to grant a new trial, Phillips excepted. Several grounds were embraced in the motion for a new trial, but all of them were waived except those involving the sufficiency of the evidence, and one other which questions the admissibility of certain testimony.

The horse, while in harness and attached to a buggy, was left standing in the street at the corner of Alabama and Broad streets, in the city of Atlanta. Phillips, the owner, stood on the sidewalk watching him, not farther from him than five or six feet. A dray, loaded with gas-pipes, approached from the rear, and the horse walked off slowly down Alabama street. Phillips followed "in a trot" to catch him. Some negro barbers ran out of their shop and frightened him. On reaching Whitehall street, he turned as if to take that street, but the barbers or others, by their interference, caused him to swerve from his course and continue down Alabama street. He was then going in a sweeping trot, and Phillips could not overtake him. The people on the street ran out, some throwing up their hands, trying to stop him. They frightened him so that he got to running very fast. Reaching the corner of Alabama and Pryor streets, he ran upon the sidewalk, struck Dewald, a man over sixty years of age, who did not see him, threw him down, knocked him insensible, and injured him very severely. There was a large wound of the scalp, a fracture of the shoulder-blade, the rupture of a membrane of the ear, causing homorrhage at the time and partial deafness afterwards. Dewald was confined to his bed for half a month, suffering great pain; was unable to attend to business for three months; cannot without pain raise the arm to his head, or take off his coat; has to be assisted to remove his coat, overcoat and vest;

and has to walk with a cane. He incurred expenses for medicine, medical services and nursing to the amount of $300. His average earnings in his business prior to the injury were $2,000 or $2,500 a year.

The horse was used to the city, was very gentle, easily controlled; a lady had frequently driven him; he often stood on the street near defendant's door in the business part of the city, unhitched, drays and other vehicles constantly passing. He was not vicious, but had life; was fancy and stylish, restless and very high-strung; was quite sensible—would pick up your handkerchief, and at his stall would fondle with you. He had about a three-minute gait, and perhaps lacked but little of being thorough-bred. When under the saddle he was hard to hold, but in harness was tender of mouth, and with any one holding the reins, was under complete control and very easily managed. He had been driven up to and past a locomotive at a crossing; had gone quietly in a buggy with a railroad train passing him from behind; and one witness had, a dozen or more times, driven him, riding out young ladies, crossing the railroad, and always found him gentle and manageable. The defendant had owned him some time; had never had an accident with him before, nor, so far as appears, had any previous owner or other person.

1. The declaration alleged that the defendant negligently left the horse in the street, attached to a buggy, unhitched and unattended. The diligence in securing his horse and preventing his escape which the defendant was bound to observe, was that care which every prudent man exercises or would exercise in dealing with similar horses, at a like place, under like circumstances. The omission of that degree of diligence would be negligence; and whether it was omitted or not in this instance, was a question for the jury. From the facts above recited, all of which appeared in evidence, the jury concluded that the negligence was established, and we think their conclusion was well warranted.

Though a horse be sensible, very gentle, and accustomed to stand unhitched at his owner's door in a busy, noisy street; yet if he be fancy, stylish, restless and very high-strung, the jury may infer negligence from leaving him loose elsewhere in the same or another street, unattended except by the owner watching him from a distance of five or six feet.

It is said that the horse was not vicious, or if so, the defendant did not know it. A vicious animal is any indi-vidual of a vicious species, or a vicious individual of a harmless species. This horse was neither, and consequent-ly the learning touching vicious animals, whether derived from statutes or judicial decisions, has nothing to do with the case. Every horse whatever, no matter how gentle and amiable, must be properly attended or secured in the crowded business streets of a city, when there by the act of the owner and subject to his control. The instincts common to the species render this necessary, and of these instincts every owner must be presumed to have notice. The qualities of the individual horse have no relevancy, except as throwing light upon the means proper to be used to secure him, and the kind of attendance, or other precautions which common prudence requires.

2. Again, it is argued that though the horse may have been loose in the street by negligence, it was not that negligence but the direct acts of others which caused him to run away. Also, that the injury to the plaintiff was too contingent and remote, as related to defendant's neg-ligence, to be the subject of recovery in damages. It may be fairly anticipated by one who negligently leaves a horse and buggy to straggle through a city, that efforts will be made to stop or capture the horse, and that such efforts, or other movements or noises, may cause him to run away, and that if he should run away, some person may be hurt. Between leaving a horse to go at random where there is great danger of doing mischief, and hurling a missile at or into a crowd, careless if it strike or not,

there is but little difference. The horse may be regarded as a squib, slow at first, but likely to become swift and destructive.

When a horse attached to a buggy is, by the owner's negligence, loose in the street and moving at will, persons who see the horse thus going at large are at no fault for trying to stop or capture him, and if by their rush, throwing up of hands or other demonstrations, they frighten him and cause him to run away, invade the sidewalk, and injure a person passing lawfully thereon, the owner will be responsible in damages for the injury. Griggs *vs.* Fleckenstein, 14 Minn. 81; McDonald *vs.* Snelling, 14 Allen, 292; Lynch *vs.* Nurdin, 1 Ad. and El. N. S. 29.

3. Some evidence touching the character or conduct of the horse after this cause of action arose, was admitted over defendant's objection, but the ground of objection is not stated in the record. No ground of objection to certain evidence being stated, either in the motion for a new trial or in the bill of exceptions, the admissibility of the evidence is not for adjudication by this court.

Judgment affirmed.