### Patton *v.* The State.

Irrespective of the question whether a dog is or is not " private property," the willful and malicious killing of one is not an indictable offence under section 4627 of the code. That section relates to the injury or destruction of inanimate property, and does not apply to injuring or killing animals of any kind.

January 27, 1894.

Indictment for malicious mischief. Before Judge Hutchins. Banks superior court. September term, 1893.

F. M. Johnson and H. H. Perry, for plaintiff in error.
R. B. Russell, solicitor-general, *contra.*

LUMPKIN, Justice.

As will be perceived from the head-note, we have decided this case without reference to the question whether a dog is or is not "private property." It may not, however, be unprofitable to notice how this question has been dealt with in other jurisdictions. In Com. *v.* Maclin, 3 Leigh, 809, it was, in the general court of Virginia, by a divided bench, decided that a statute making it indictable to knowingly and willfully destroy or injure any tree, or other timber, or property *real or personal*, belonging to another, did not authorize a criminal prosecution for the killing of a dog. In the case of The State *v.* Harriman, 75 Me. 562, it was held that dogs were not recognized in law as belonging to the class denominated "domestic animals," and consequently, that a demurrer to an indictment for killing a dog, founded upon a statute making criminal the killing or wounding of "domestic animals" ought to have been sustained. In a dissenting opinion by Appleton, C. J., in that case, he eulogized the dog in the following language: "He *is* a domestic animal. From the time of the pyramids to the present day, from the frozen pole to the torrid zone, wherever man has been, there has been his dog. Cuvier has asserted that the dog was, perhaps, necessary for the establishment of civil society, and that a little reflection will convince us that barbarous nations owe much of their civilization above the brute to the possession of the dog. He is the friend and companion of his master—accompanying him in his walks, his servant, aiding him in his hunting, the playmate of his children —an inmate of his house, protecting it against all assailants." And later on, the Chief Justice quoted approvingly the following poetic tribute to dogs:

> "They are honest creatures
> And ne'er betray their masters, never fawn
> On any they love not."

On the other hand, in Wilson v. W. & M. Railroad Co., 10 Rich. (S. C.) 52, Munro, J., alluded to the dog as an animal whose nature is carnivorous, and who is prompted by instinct and appetite to roam at large in the forest in the pursuit of game, or upon a sheep-killing expedition; and finally stigmatized him as a "yelping cur" whose presence upon a railroad track should not arrest in its progress a train of cars freighted with products or passengers. In the United States v. Gideon, 1 Minn. 292, it was decided that the malicious killing of a dog was not an indictable offence under a statute providing that "every person who shall willfully and maliciously kill, maim or disfigure any horses, cattle, *or other beasts*, of another person," shall be punished, etc.

Turning now to the "Old North State," it was held in Latham's case, 13 Ired. 33, that an indictment for malicious mischief in killing a dog would lie. In this case, no statute upon which the prosecution could be sustained was mentioned. In Indiana, it was held in The State v. Sumner, 2 Ind. 377, that the malicious killing of a dog was an indictable offence under a statute providing that every person who shall maliciously destroy *any property* shall be fined, etc. This ruling was followed in the later case of Kinsman v. The State, 77 Ind. 132. In New Hampshire, in the case of The State v. McDuffie, 34 N. H. 523, it was held that under a statute providing for the punishment of any willful and malicious act whereby any tree, or *the real or personal estate*, of another should be injured, an indictment would lie for the willful and malicious killing of a dog.

It will thus be seen that in other States, under statutes varying in their terms, the question whether a dog is such property as to render the slayer of one subject to prosecution for malicious mischief, has been decided both ways. Those who may be interested in further investigating the status of the dog as property, may

v 93-8

consult with profit: Dodson v. Mock (4 D. & B. Law, 146), 32 Am. Dec. 677; Perry v. Phipps (N. C.), 51 Am. Dec. 387 ; Harrington v. Miles (Kan.), 15 Am. Rep. 355; Parker v. Mise, 27 Ala. 480; Wheatley v. Harris, 4 Sneed (Tenn.), 469; *Jemison* v. *Southwestern Railroad Co.*, 75 *Ga.* 444 ; and the numerous authorities cited in these cases, and notes to the same.

Before discussing the ground upon which we have based our decision in the present case, we will remark that we do not think it probable the legislature of this State ever regarded the dog as being, in a general sense, property, concerning which a criminal offence could be committed. After provision is made in the 6th division, title I of the penal code, for the indictment and punishment of larcenies of various domestic animals, section 4402 provides as follows: "All other domestic animals which are fit for food, and also a dog, may be subjects of simple larceny; and any person or persons who shall steal any such animal or animals, shall be punished," etc. If a dog had been considered as property, as are domestic animals fit for food, it is not likely that it would have been deemed necessary to provide specially that the stealing of one should be simple larceny; and we find nothing in our criminal statutes suggesting any reason why this animal should be regarded as a subject-matter of crime in any instance where it is not expressly so declared.

But whether a dog be property or not, we are convinced, after considerable deliberation, that the willful and malicious killing of one is not an indictable offence under section 4627 of the code, upon which the indictment in this case was based. In section 4612, the legislature undertook to deal with animals the maiming or killing of which it intended to make indictable. As this section originally stood, it was indictable to maliciously kill a hog, but not indictable to maliciously maim

one; and the legislature saw proper, by an act passed in 1881 (Acts of 1880–1, p. 73), to make this latter act indictable also, so that now it is malicious mischief either to maliciously maim or kill any of the animals mentioned or designated in that section. It does not in its terms expressly include dogs, and we are satisfied it was never intended by the legislature that the provisions of this section should apply to them. The word "maim" does not include any injuries to animals, not causing death, which exceed or fall short of technical maiming. This court in *Bailey* v. *The State*, 65 *Ga.* 410, distinctly held that the word "maim" as used in this section, was intended to be understood in its technical signification; and consequently that the mere shooting of a cow was not rendered criminal by the statute. In the chapter of the penal code relating to fraudulent or malicious mischief, there are numerous sections which relate to the destruction or injuring of inanimate property. Section 4605 relates to tearing, burning or in any other way destroying any deed, etc.; section 4607 to cutting down, removing or destroying any beacon or buoy; section 4611 to injuring or destroying bridges, etc.; section 4613 to injuring or destroying turnpike gates, etc.; section 4615 to injuring or destroying trees. These instances are not exhaustive, but will be sufficient to illustrate our meaning. The words "destroy" and "injure" are appropriate when used with reference to offences committed upon inanimate things; but as has already been seen, when providing what should be malicious mischief as to living animals, the words "maim" and "kill" were used in section 4612, and in that section we find neither the word "injure" nor the word "destroy." In section 4627 the words "injuring" and "destroying" are used. We think, in the first place, that section 4612 was intended to be exhaustive of the classes of animals upon which the offence of malicious mischief could be

committed, and that no act is indictable under that section except the "maiming" or "killing" of one of the animals therein specified or designated; and also, that the words "all other acts of willful and malicious mischief . . . . not herein enumerated," as used in section 4627, were not intended to refer to acts done to animals of any kind; and secondly, that the words "injuring or destroying any other public or private property," as used in the section last mentioned, were intended to apply exclusively to inanimate property. If the willful and malicious killing of a dog would be indictable under that section, it is obvious that the willful and malicious *injuring* of one would also be indictable. We have already seen, in *Bailey's* case, *supra*, that the injuring of a cow, otherwise than by maiming, was not criminal under section 4612 of the code. Under this decision, it would necessarily follow that the injuring of a horse, however badly it might disable or disfigure him, would not be indictable under that section, unless the injury amounted to maiming. If, therefore, the contention of the State in this case is sound, the mere injuring of a worthless, bob-tailed, bench-legged fice, if done maliciously, would be malicious mischief, while, as has been shown, it would not be malicious mischief, by wanton cruelty, to grossly mar the appearance and beauty of the most magnificent and valuable blooded horse in the State. Sustaining the position held by the State would inevitably lead to the above result, and its absolute absurdity demonstrates that it could never have been intended by the lawmaking power.

The demurrer to the indictment, alleging that it set forth no crime against the laws of this State, ought to have been sustained; and as this was not done, the judgment, after conviction, ought to have been arrested.

*Judgment reversed.*