### BROWDER-MANGET CO. *v.* CALHOUN BRICK CO.

1. Where a railroad company permitted shippers and consignees to use a driveway in its yard for the purpose of loading and unloading cars, and a foreman or a person who had cars to unload, while engaged in the performance of his duties, hitched a horse to one of the cars and left it standing and eating feed which had been given it, if the horse kicked a mule of another shipper which was driven behind it, this did not make out a prima facie case for recovery, without proof of viciousness and scienter, although the railroad company had given no permission to feed horses in that place.

JUNE 13, 1912.

Action for damages. Before Judge Pendleton. Fulton superior court. January 5, 1911.

*Hewlett & Dennis,* for plaintiff.

*Candler, Thomson & Hirsch,* for defendant.

LUMPKIN, J.   The Browder-Manget Company brought suit against the Calhoun Brick Company, alleging in substance as follows: The defendant was engaged in the manufacturing and selling of brick, owned mules and horses, operated wagons and drays, and employed drivers, and also a foreman to superintend and look after the management of its business in the county where the injury took place. It owned and furnished to its foreman a certain horse for the better performance of his duties. The horse was used "as an industrial appliance," and was vicious and unsafe, and this was known to the defendant, or should have been so known. The foreman hitched the horse to a car on the track of the railway company, at a place known as "a team track," which was used by the public for loading and unloading cars from the tracks of the railway. The defendant knew that the place was used by the public and frequented by persons, vehicles, and animals for the purposes mentioned. A drayman of the plaintiff endeavored to pass in the rear of the horse, when the horse kicked the mule attached to the dray and broke its foreleg. It was the duty of the foreman to feed and care for the horse, and he was acting in the scope of his employment. He was negligent in tying the horse in a place so frequented by persons, vehicles, and animals. Such place was not designed or used for the purpose of feeding horses, and "the said defendant did thus wrongfully place the said horse therein to petitioner's injury and damage."

On the trial the evidence tended to show the hitching of the horse to the car by the defendant's foreman, the driving behind him by the plaintiff's driver, and the kicking and injury of the plaintiff's mule. On the subject of the place where this occurred, the testimony of the agent of the railroad company was to the effect, that the driveway was for the purpose alone of loading and unloading shipments of freight, and no one was authorized to tie horses to a car and feed them; that ordinarily that particular track was assigned to the defendant for the unloading of brick, as a matter of convenience; that he did not know that people fed their stock there while unloading cars; that it might have been done,

but was not authorized; and that there were no instructions posted in the yards or given to shippers that they must not feed their horses there. There was no evidence of any previous viciousness on the part of the horse, or of notice thereof to the defendant.

At the close of the plaintiff's evidence, the court granted a nonsuit, and the plaintiff excepted.

If the plaintiff sought to recover only because of the act of a vicious horse, it would be sufficient to say that there was no evidence of previous viciousness or scienter. But as there were allegations in certain paragraphs of the petition to the effect that the defendant's foreman was negligent in tying the horse in a frequented place, and that the driveway was not designed or used for the purpose of feeding horses, and the ·defendant thus wrongfully placed the horse therein; and as counsel for the plaintiff in error, in his able brief, insists that, without proof of viciousness or of the scienter, the case should have been submitted to the jury, we will discuss the question somewhat further. The common-law rule as to the liability of an owner of domestic animals allowed to run at large, and committing damages on the premises of another, or the status of the law on that subject, prior to or under the statutes providing for local elections as to fences, need not be discussed. The horse of the defendant was not running at large or on the land of the plaintiff.

Two cases will suffice as · illustrations of recoveries which have been allowed on account of negligence of the owner or person in control of a domestic animal, regardless of any vicious disposition on its part. In Jones v. Owen, 24 L. T. R. N. S. 587, two greyhounds coupled together with a chain or piece of rope were allowed to go upon the highway at night. They ran on each side of a passer, and he was thrown down in consequence of the chain or rope coming in contact with his legs, and was injured. The owner was held liable because of negligence in permitting the dogs to go coupled together upon the high road, without any proof of viciousness in them. In *Phillips* v. *Dewald*, 79 *Ga.* 732 (7 S. E. 151, 11 Am. St. R. 458), a horse was negligently left standing unhitched in a street, in front of its owner's door. It moved off, and, being frightened by persons who sought to capture it, ran away, ran upon the sidewalk, and injured a passer. It was held that the question of negligence was for the jury, and a recovery by ·the

plaintiff was sustained, without proof of viciousness in the horse. As to injuries done by vicious animals in the exercise of their vicious propensities, a number of courts in England and in America have held that the gist of the action is keeping the animal after notice of its vicious character. Cooley on Torts (3d ed.), 696; 2 Am. & Eng. Enc. Law, 353, 354, and note. Of course, where this rule prevails, proof of the scienter is necessary. Other courts have held that the gist of the action is not in the fact of keeping the vicious animal after notice of its vicious propensity, but negligence in the manner of such keeping. *Friedman* v. *Goodman,* 124 *Ga.* 532 (52 S. E. 892). But whether the fact of keeping after knowledge of the viciousness be treated as the gist of the action, or whether it is sought to impose upon the owner a certain duty by reason of knowledge of the viciousness, in either event, as to such actions, proof of the scienter will be necessary.

In some cases it has been declared that if a domestic animal is rightfully in the place where it inflicts an injury, the owner will not be liable unless he had knowledge of the vicious propensities of such animal; but if the animal was wrongfully in such place, proof of the scienter is unnecessary. 2 Am. & Eng. Enc. Law (2d ed.), 364, and citations; 2 Cyc. 368; Eddy *v.* Union R. Co., 25 R. I. 451 (56 Atl. 677, 105 Am. St. R. 897, 1 Am. & Eng. Ann. Cas. 204). The statement was cited in *Reed* v. *Southern Express Co.,* 95 *Ga.* 108 (22 S. E. 133, 51 Am. St. R. 62). To the mind of the writer of this opinion the generic words "rightfully" and "wrongfully" as applied to places and animals may possibly be subject to misconstruction. Some of the cases mentioned deal with trespasses; but others go further, and hold that the owner may subject himself to liability on the basis of wrongfully putting his domestic animal in a certain place, although there was no trespass upon the premises of another, without proof of the scienter. Thus in New Jersey one whose servant led his horse by a halter along a sidewalk in a city was held liable to a person lawfully passing upon the sidewalk and who was kicked by the horse, without requiring proof of scienter. Healey *v.* Ballantine, 66 N. J. L. 339 (49 Atl. 511). In Massachusetts, where a wagon was stuck in the mud, and one of the horses was made nervous by the effort to pull it out and by being brutally beaten, and was then left standing partially on the sidewalk while eating from a feed bag, and kicked

a person passing on the sidewalk, the owner was held liable. Referring to the necessity for knowledge of previous viciousness, Holmes, J., sententiously said: "It used to be said in England, under the rule requiring notice of the habits of an animal, that every dog was entitled to one worry, but it is not universally true that every horse is entitled to one kick." Hardiman *v.* Wholley, 172 Mass. 411 (52 N. E. 518, 70 Am. St. R. 292). See, also, Dickson *v.* McCoy, 39 N. Y. 400; Goodman *v.* Gay, 15 Pa. 188 (53 Am. D. 589); Ingham's Law of Animals, §§ 74, 93. For the purpose of the present case, it is unnecessary to determine how far these rulings will be followed here.

In *Reed* v. *Southern Express Co.,* 95 *Ga.* 108, supra, an ordinary draft horse, attached to a vehicle, was momentarily left standing in a street adjacent to a sidewalk, and bit one passing by on the sidewalk. It was held that the horse was in its rightful place in the street; and that, there being no evidence that it was vicious or had a tendency to bite persons, the injury was not one which the defendant was bound to anticipate and guard against, and the leaving of the horse unattended was not such negligence as would entitle the plaintiff to recover. In Corcoran *v.* Kelly, 113 N. Y. Supp. 686, the Supreme Court of New York held that, where a horse was negligently left standing in a street while eating and bit a passer-by, the vicious propensity of the horse was the proximate cause of the injury, and proof of the scienter was necessary.

Turning now to the facts of the case before us, the place where the injury occurred was in a railroad freight-yard. Shippers and consignees were allowed by the company to use a driveway for the purpose of loading and unloading freight. An agent of the company testified, that the company did not authorize that horses be tied to cars and fed in the driveway; that ordinarily the particular track on which the car was standing where the horse was hitched while eating was assigned to the defendant company for unloading brick, as a matter of convenience; that he did not know that others fed their stock there while unloading cars; but that no instructions were posted in the yards or given to shippers that they must not feed their horses there. The horse kicked a mule which was driven behind it by a driver of the plaintiff. The defendant's "riding boss" rode the horse there in the discharge of his duties in connection with the unloading of the cars. If the tying of the horse

and feeding him amounted to a misuse of the license of the railroad company, such company is not complaining. Relatively to the plaintiff, which was also a licensee, it can not be held that the horse was unlawfully at that place regardless of any vicious characteristics. The place was a passway which shippers and consignees were permitted to use. As to the licensees, it was somewhat, analogous to a road or street which various persons may lawfully use. It was thus quite similar to the *Reed* case, in which a horse was in the street, but temporarily stopped near the sidewalk. In the absence of any proof of viciousness and scienter, there was no error in granting a nonsuit.

*Judgment affirmed. All the Justices concur.*