## A00A0985. TRAN v. THE STATE.
(539 SE2d 862)

RUFFIN, Judge.

Tuyen Minh Tran appeals his convictions of possession of marijuana with intent to distribute and possession of cocaine with intent to distribute. Tran asserts seven enumerations of error, all of which lack merit. We therefore affirm.

Viewed in the light most favorable to the verdict, the record shows that Detective D. J. Rhodes of the DeKalb County Police Department received information from a confidential informant concerning a possible shipment of narcotics to North Carolina from a residence at 850 Ahearn Court in Suwanee, Georgia. On March 27, 1997, Rhodes passed this information on to Detective Dallas Stidd of the Norcross Police Department, who drove out to the residence that day. Stidd saw an Asian male in the yard washing a silver vehicle with a North Carolina license plate. Stidd reported this observation, along with the vehicle's tag number, to Rhodes, who checked with her informant and then confirmed that "that was the vehicle — that that was the person . . . that the drugs were supposed to be going to in North Carolina."

Around 8:00 the following morning, Rhodes, Stidd, and other members of a Gwinnett County Drug Task Force set up surveillance at the residence. When the surveillance team arrived, a red car and the silver vehicle from the previous day were at the house, and a white car arrived shortly thereafter. A man later identified as Son To exited the white car and went into the house. To and another man later identified as Tran came out of the house and began loading luggage into the red car. A third man, later identified as Tri Huynh, came out of the house carrying a white plastic bag, which he placed

inside the silver car. Tran and Huynh then stood in the yard with walkie-talkies that they appeared to be testing. Detective Rhodes testified that drug couriers commonly use walkie-talkies to communicate with each other on the highway.

Both cars then left the residence. Tran was driving the red car, with To as a passenger, and Huynh was driving the silver car. Both cars were driven to a nearby gas station where they were refueled. The silver car left the gas station first and entered Interstate 85 northbound, then stopped at a nearby rest stop. The red car left the gas station approximately five minutes after the silver car and also entered I-85 northbound. When the red car passed the rest stop, the silver car pulled out behind it and followed the red car from that point.

Investigator T. G. Bartik, another member of the task force who was following the cars, saw both cars change lanes without using a turn signal. Bartik relayed this information over the police radio. Deputy Paul Corso of the Gwinnett County Sheriff's Office stopped the silver car, obtained Huynh's consent to search it, and then led his drug-sniffing dog around it. The dog alerted by scratching the driver's side door, and Corso reported the alert over the police radio. Corso then opened the car and found a plastic bag behind the driver's seat that contained five large bags of suspected marijuana, three bags containing a total of 22.3 grams of cocaine, and a walkie-talkie. Corso advised over the police radio that he had found drugs in the silver car.

Meanwhile, the red car exited the interstate and headed toward Winder, Georgia. Stidd, who was tailing the red car, contacted Winder City Police, who pulled the car over. Stidd told Tran and To that they were not under arrest, but were being stopped for a traffic violation. Tran gave Stidd consent to search the car, and Stidd found a pistol belonging to To and a walkie-talkie, but no contraband. At that point, Stidd heard over the police radio that suspected contraband had been found in the silver car, and he read Tran and To their *Miranda* rights. Stidd asked Tran if he was traveling with any other vehicles, and Tran said no.

Investigator Bartik obtained a search warrant for 850 Ahearn Court, which, he learned, belonged to Tran. Stidd and other officers searched the house and found a safe, which Stidd opened using a key from a key ring that he had found in Tran's car. Inside the safe were 22.3 grams of cocaine, $1,300 in cash, and six empty $1,000 money wrappers. In a cubbyhole in the master bedroom, police found 98.7 grams of marijuana, a scale, and several duffle bags containing marijuana residue.

Tran and Huynh were charged with one count of possession of marijuana with intent to distribute and one count of trafficking in

cocaine.[1] The jury found Tran guilty as charged on the marijuana count and guilty of the lesser included offense of possession of cocaine with intent to distribute.[2]

1. In his first enumeration of error, Tran asserts that the trial court erred in denying his motion to suppress the evidence seized in the search of his car and home. Tran contends that the traffic stop of his car was illegal and pretextual, and that the results of the subsequent searches of his car and home must be suppressed as the "fruit of the poisonous tree." Specifically, Tran argues that there is no evidence that he committed an illegal lane change or any other traffic violation that would have justified a traffic stop.

It is well settled that police may conduct a brief investigatory stop of a vehicle if they have specific, articulable facts that give rise to a reasonable suspicion of criminal conduct.[3] At the hearing on the motion to suppress, Detective Stidd testified that he decided to have Tran's car stopped because of "what I observed at 850 Ahearn Court, the dog alert, changing lanes without a blinker, all of those reasons." Pretermitting whether Tran committed an illegal lane change, we agree with the trial court that the stop was justified for other reasons given by Stidd.

A confidential informant reported that drugs would be delivered to North Carolina from a specific address in Suwanee and later confirmed that the recipient was an Asian male driving a silver car with a North Carolina tag. Although there was no evidence that the informant was reliable, the police were able to corroborate significant details of the tip through surveillance.[4] On the morning of the predicted trip, the police saw Tran and To pack luggage into a red car and saw Huynh place a white shopping bag from inside the house in question into the silver car. The police followed both cars as they left the house, stopped for gas, departed separately for I-85 northbound (the most logical route to North Carolina), and then joined on the highway and traveled together.

In addition to the tip, the police saw Tran and Huynh testing walkie-talkies, which are commonly used by drug couriers, in the front yard before leaving the house that morning. And, most impor-

---

[1] The indictment aggregated the cocaine found in Huynh's car and the cocaine found in Tran's house, charging that Tran and Huynh possessed 28 grams or more of cocaine.

[2] Huynh, who was tried separately, was found guilty as charged on both counts. We recently affirmed his convictions. *Huynh v. State*, 239 Ga. App. 62 (518 SE2d 920) (1999).

[3] *Tarwid v. State*, 184 Ga. App. 853, 854 (1) (363 SE2d 63) (1987).

[4] See *Gordon v. State*, 242 Ga. App. 50, 52 (1) (528 SE2d 838) (2000) ("Although a tip provided by an informant of unknown reliability will not ordinarily create a reasonable suspicion of criminal activity, reliability may be established if the tip is detailed enough to provide some basis for predicting the future behavior of the suspect and those details are corroborated by the observations of police.").

tantly, Detective Stidd testified at the hearing on the motion to suppress that, before having the red car stopped, he heard over the police radio that a drug dog had positively alerted to the silver car. Thus, Stidd had strong reason to believe that Tran's traveling companion, Huynh, was carrying contraband.[5] Under all of these circumstances, we conclude that Stidd had a reasonable suspicion that Tran was engaged in criminal drug activity, thereby justifying the stop of his car.[6] Because the initial stop was valid, Tran's "fruit of the poisonous tree" argument fails.

2. The warrant authorizing the search of Tran's residence was issued based on an affidavit by Investigator Bartik, which stated that Detective Rhodes had told Gwinnett County Drug Task Force investigators that "an Asian male would be departing [850 Ahearn Court] in a vehicle with a North Carolina tag, traveling to North Carolina, transporting narcotics." The affidavit also stated that the police had surveilled the residence and seen an Asian male loading luggage and packages into the vehicle; that police had stopped the vehicle and found marijuana and cocaine inside; and that they believed there was additional marijuana and/or cocaine in the residence. Tran argues that the affidavit was deficient because it was "heavily based upon an informant of unknown reliability." We disagree.

In reviewing the sufficiency of an affidavit in support of a search warrant, we "simply . . . ensure that the magistrate had a substantial basis for concluding that probable cause existed."[7] Tran argues that the affidavit contains no information about the reliability of the informant. However, "a showing that an informant and his information are reliable is not limited to proof of the informant's veracity and the basis of his knowledge. Reliability may be shown by corroboration of the informant's tip."[8] As the affidavit stated, police corroborated details of the tip — i.e., they saw an Asian male loading luggage into a car with a North Carolina tag — through surveillance of the residence and they later found drugs in the car.[9] Thus, there was

---

[5] See *Jones v. State*, 237 Ga. App. 847, 849 (1) (515 SE2d 841) (1999) (officer had reasonable suspicion to conduct field interview of defendant where, among other things, drugs had been found on defendant's companion).

[6] The fact that Stidd did not immediately tell Tran and To that the purpose of the stop was to investigate possible drug activity does not change this analysis. Tran has cited no authority, and we have found none, for the proposition that an officer must immediately reveal his true motives to a suspect in a criminal investigation.

[7] *York v. State*, 242 Ga. App. 281, 293 (7) (528 SE2d 823) (2000).

[8] (Footnotes omitted.) *Dollar v. State*, 242 Ga. App. 511, 513 (1) (a) (529 SE2d 665) (2000).

[9] See *Starks v. State*, 240 Ga. App. 346, 347-348 (1) (523 SE2d 397) (1999) (affidavit was sufficient because it contained information that corroborated informant's tip, as well as other information).

a substantial basis for the magistrate's finding of probable cause.

3. Just before trial, the State informed the trial court that it could not prove that the suspected marijuana found in Huynh's car was, in fact, marijuana because the crime lab technician who tested it was unavailable and the State had failed to obtain a retest. Accordingly, the trial court granted defense counsel's motion in limine to exclude the substance from evidence. Upon request of the prosecutor, the trial court later ruled that, if a proper foundation was laid, the State's witnesses could refer to the substance because it was part of the res gestae of the offense. Thus, Deputy Corso testified that, upon searching Huynh's car, he found a plastic bag containing "a green leafy substance, which was suspected marijuana"; Detective Stidd testified that he heard Corso say over the police radio that he found approximately five pounds of "suspected marijuana"; and an employee in the Gwinnett County Police Department's evidence room stated that she logged into evidence clear baggies containing "green leafy material."

Although none of the State's witnesses ever testified that the substance found in the silver car was, in fact, marijuana, Tran contends that these witnesses' references to the material were unduly prejudicial. It is well settled that

> [s]urrounding circumstances constituting part of the res gestae may always be shown to the jury along with the principal fact. . . . Hence, acts and circumstances forming a part or continuation of the main transaction are admissible as res gestae and it does not matter that the act is another criminal offense and does not tend to establish the main offense. In addition, all circumstances surrounding an arrest are admissible for whatever value the jury desires to place on them.[10]

We have long held that contraband found on a defendant's person at the time of his arrest is admissible as part of the res gestae, even if the defendant is not charged with a crime in connection with that contraband.[11] Although the substance at issue here was not found on Tran's person, it was nevertheless part of the "surrounding circumstances" because it was found in the car of his traveling companion; it was inside a bag that had been removed from Tran's house earlier that day; and its discovery formed the basis for the arrest of Tran.

---

[10] (Citations and punctuation omitted.) *Dean v. State*, 211 Ga. App. 28, 31-32 (4) (438 SE2d 380) (1993).

[11] See *Reynolds v. State*, 234 Ga. App. 884, 886 (2) (508 SE2d 674) (1998); *Maddox v. State*, 227 Ga. App. 602, 604 (3) (490 SE2d 174) (1997).

Accordingly, the trial court did not err in allowing witnesses for the State to refer to the substance, regardless of whether the substance had been positively identified as marijuana.

4. During closing argument, Tran's counsel referred to the suspected marijuana found in Huynh's car as follows: "Oh, by the way, the green leafy substance: Never been admitted into evidence, not before you. How does that reflect upon the competency of this investigation?" The prosecutor objected, and the trial court ruled that "the door has been opened by counsel for the defendant such that counsel for the State may explain to the jury why the marijuana was not in evidence." Defense counsel then told the jury that the suspected marijuana "was not admitted into evidence because of a technical error. . . . It was not tested in time." In his closing argument, the prosecutor reiterated that

> [defense counsel] stated that it wasn't submitted because a test was not completed in time. That's correct. . . . You didn't get it. You can't consider it. The officer addressed it as suspected marijuana, and that's all it is. There's no proof as to what it is.

Tran argues that the trial court erred in ruling that defense counsel "opened the door." According to Tran, "the State itself invited defense comments concerning the 'suspected marijuana' from the silver car by repeatedly eliciting testimony referring to 'suspected marijuana' from the State's witnesses." But as we ruled in Division 3, the witnesses' references to "suspected marijuana" were admissible as part of the res gestae. Thus, the jury already knew that the police found in the silver car a substance they believed to be marijuana. Pretermitting whether Tran waived this argument by first explaining to the jury why the substance was not admitted into evidence, he fails to show that the explanation — which included the statement that the jury could not consider the substance — caused him any harm.[12]

5. Tran argues that the State failed to show with reasonable certainty that the cocaine introduced into evidence was not subjected to tampering. According to Tran, there was "definite evidence of tampering" because the Georgia Bureau of Investigation crime lab technician who identified the substance as cocaine testified that another technician, who was not called to testify, had previously tested it. Over Tran's chain of custody objection, the trial court admitted the cocaine into evidence.

---

[12] *Lane v. State*, 239 Ga. App. 230, 232 (4) (520 SE2d 705) (1999) ("Harm and error must be shown to warrant reversal.").

Although the State had the burden of proving with reasonable certainty that the evidence was the same substance it seized and that there had been no tampering or substitution, the State was not required to call as a witness every person who came into contact with the evidence.[13] The mere fact that more than one technician handled the cocaine does not constitute "definite evidence of tampering." Rather, this circumstance permits "at most, bare speculation of tampering or substitution."[14] Accordingly, the trial court properly admitted the evidence, and it was for the jury to determine how much weight to give that evidence.[15]

6. Tran contends that the trial court should have granted his motion for directed verdict because the State proved, at most, that Tran and Huynh had equal access to the contraband. We disagree.

Under the equal access rule, "merely finding contraband on premises occupied by a defendant is not sufficient to support a conviction if it *affirmatively* appears from the evidence that persons other than the defendant had equal opportunity to commit the crime."[16] Whether evidence of equal access is sufficient to rebut the inference that the defendant possessed the contraband is a question for the jury under proper instructions.[17]

At trial, Tran denied any knowledge of the contraband found in his home. He testified that he kept a spare key to his safe in a vase in the living room and that both Huynh, who was an overnight guest in his home, and To, who was a frequent visitor, had seen him using the key "numerous times." Tran also denied any knowledge of the contraband found in the plastic bag in Huynh's car and denied seeing Huynh remove the bag from his home that morning. The jury, however, was not required to believe Tran's testimony and was entitled to conclude that the contraband found in his home did belong to Tran[18] and that Tran jointly possessed — or was a party to the possession of — the contraband in Huynh's car.

Tran's reliance on *Morrison v. State*[19] is misplaced. In that case, the defendant and four other adults were present at the defendant's girlfriend's house when police searched it and found drugs in the kitchen. There was no evidence linking the defendant to the drugs

---

[13] See *Mathis v. State*, 204 Ga. App. 244 (1) (418 SE2d 800) (1992).

[14] (Punctuation omitted.) Id.

[15] See *Staples v. State*, 209 Ga. App. 802, 805-806 (5) (434 SE2d 757) (1993).

[16] (Punctuation omitted; emphasis in original.) *Taylor v. State*, 209 Ga. App. 38, 39 (433 SE2d 87) (1993).

[17] *Visser v. State*, 237 Ga. App. 798, 800 (2) (516 SE2d 840) (1999).

[18] See *Mathis v. State*, 204 Ga. App. 896, 897 (1) (420 SE2d 788) (1992) ("The equal access rule is not properly invoked in regard to persons who are merely visiting, even overnight; thus 'equal' access' is not merely 'access.'") (punctuation omitted; emphasis in original).

[19] 220 Ga. App. 151, 152-154 (1) (469 SE2d 686) (1996).

beyond his mere presence at the house, where he did not live and did not have free access. Accordingly, we held that the evidence did not exclude the reasonable hypothesis that the drugs belonged to any of the other adults at the house.[20] Here, by contrast, ample evidence ties Tran to the contraband. Tran admitted that he owned the house where the drugs were found and that the scales, money, and money wrappers were his. The drugs were not discovered in open areas, but in a locked safe and in a cubbyhole in the master bedroom.[21] The contraband in Huynh's car was in a white plastic bag that had been removed from Tran's house earlier that day; Huynh and Tran were traveling together using walkie-talkies; and Tran was not truthful about traveling with Huynh when questioned by police. "Under these circumstances, we find the evidence against [Tran] was sufficient to find [him] guilty of joint constructive possession, or at least as a party to the crime."[22]

7. Finally, Tran contends that the trial court erred by failing to give the jury his written request to charge no. 53, that "[a] finding of constructive possession of narcotics cannot rest upon mere spatial proximity to the narcotics, especially where the narcotics are hidden." Although this charge is a correct statement of the law,[23] the trial court did not err by failing to give it because the jury instructions as a whole adequately covered that principle. Specifically, the court told the jury that the defendant could not be convicted if he had no knowledge of the crime and did not participate or help in its commission; that the defendant's mere presence at the scene of the crime would not authorize a conviction; and that constructive possession entails the power and intention to exercise authority or control over a thing. "A trial court does not err in failing to give an appropriate request to charge, as written, when its charge as a whole contains the same principles of law set forth in the request."[24]

*Judgment affirmed. Andrews, P. J., and Ellington, J., concur.*

DECIDED SEPTEMBER 27, 2000 — ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*Stephen F. Mackie*, for appellant.

---

[20] Id. at 153-154.

[21] Cf. *Taylor*, supra ("Generally, the equal access rule applies 'to areas which are open, notorious and easily accessible to other persons.' ").

[22] *Harvey v. State*, 212 Ga. App. 632, 634 (2) (442 SE2d 478) (1994).

[23] See *Mitchell v. State*, 268 Ga. 592, 593 (492 SE2d 204) (1997).

[24] (Punctuation omitted.) *Sullivan v. State*, 242 Ga. App. 613, 615 (4) (530 SE2d 521) (2000).

*Daniel J. Porter, District Attorney, Donald P. Geary, Assistant District Attorney*, for appellee.