A01A1480, A01A1481. JOHNSTON v. WARENDH et al. (two cases).
(556 SE2d 867)

POPE, Presiding Judge.

Agneta and Per-Olof Warendh filed suit against Lori Johnston and her brother, Robert Johnston, seeking damages for injuries Agneta Warendh sustained when she was attacked by two Rottweilers outside the home the Johnstons shared with Michelle Berndt. The trial court denied in part the Johnstons' motions for summary judgment, finding the existence of genuine issues of material fact as to whether the dogs were "confined on the premises" within the meaning of the local ordinance. The court granted their motions for partial summary judgment as to punitive damages and attorney fees. After granting the defendants' applications for interlocutory appeal, we affirm.

When ruling on a motion for summary judgment, the party opposing the motion should be given the benefit of all reasonable doubt, and the court should construe the evidence and all inferences and conclusions therefrom most favorably toward that party. *Lau's Corp. v. Haskins,* 261 Ga. 491 (405 SE2d 474) (1991); *Moore v. Goldome Credit Corp.,* 187 Ga. App. 594, 596 (370 SE2d 843) (1988).

So construed, the evidence shows that Robert Johnston and Berndt each owned one of the dogs. Neither of the dogs' owners was home on the date in question, December 20, 1997. The Warendhs, who used to live in the Roswell home, went there to retrieve their mail. Agneta Warendh either knocked or rang the doorbell, and Lori Johnston answered the door. Agneta Warendh deposed that she observed the dogs barking behind Lori Johnston, who shut the door, reopened it, and tried to slip out. The dogs pushed the door open and ran out of the house. Lori Johnston tried to grab one of the dogs' collars, but she was unable to restrain the animal. At least one of the dogs attacked Agneta Warendh, jumping on her and biting her arms and abdomen. Lori Johnston was eventually able to get the dogs inside and secure them in the kitchen.

*Case No. A01A1480*

1. In her appeal, Lori Johnston contends that she was entitled to summary judgment on the Warendhs' claim that she violated OCGA § 51-2-7. We disagree.

That statute provides:

> A person who owns or keeps a vicious or dangerous animal of any kind and who, by careless management or by allowing the animal to go at liberty, causes injury to another person who does not provoke the injury by his own act may be liable in damages to the person so injured. In proving vicious propensity, it shall be sufficient to show that the animal was required to be at heel or on a leash by an ordinance of a city, county, or consolidated government, and that the said animal was at the time of the occurrence not at heel or on a leash.

See *Oertel v. Chi Psi Fraternity*, 239 Ga. App. 147, 148-149 (2) (521 SE2d 71) (1999).

As a preliminary matter, the Warendhs' case against Lori Johnston requires them to prove that she kept the dogs, because there was evidence that she did not actually own either of the animals. Although in her answer Lori Johnston denied that she kept the dogs, she did not argue the point in her motion for summary judgment, nor did she enumerate as error the trial court's implicit finding that the record raised an issue as to her keeping the dogs. Our review of the record shows that a jury issue exists as to whether she was keeping the dogs at the time of the incident.[1] See, e.g., *Goodman v. Kahn*, 182 Ga. App. 724, 725 (356 SE2d 757) (1987). See generally Ludington, Annotation, Who "Harbors" or "Keeps" Dog Under Animal Liability Statute, 64 ALR4th 963 (2001).

The first sentence of OCGA § 51-2-7 has been applied in dog bite cases in Georgia since Cobb's Code of 1863. After 1863, appellate courts modified the statute by asserting that it was "but a restatement of the common law, and at common law . . . it was necessary to show, not only that the animal was vicious or dangerous, but also that the owner knew this fact. The scienter was the gist of the action." *Harvey v. Buchanan*, 121 Ga. 384, 385 (49 SE 281) (1904).[2]

---

[1] If this were a criminal case, and the dogs were contraband, we would allow a jury to find that Lori Johnston had constructive possession of them. See generally *Tran v. State*, 246 Ga. App. 153, 160 (6) (539 SE2d 862) (2000); *Deering v. State*, 244 Ga. App. 30, 32 (2) (535 SE2d 4) (2000).

[2] As authority, Justice Cobb cited two decisions, only one of which was on point, *Reed v. Southern Express Co.*, 95 Ga. 108 (22 SE 133) (1894). See also *Sinclair v. Friedlander*, 197 Ga. 797, 800 (30 SE2d 398) (1944) (construction of a statute codifying common law).

Accord *Clark v. Joiner*, 242 Ga. App. 421 (530 SE2d 45) (2000). Moreover, the defendant's knowledge of the dangerous propensity must be greater than any such knowledge possessed by the plaintiff. *Wade v. American Nat. Ins. Co.*, 246 Ga. App. 458, 461 (1) (540 SE2d 671) (2000).

In 1985, the General Assembly expanded upon the scienter rule, also known as the "first bite rule," by amending the statute to add the second sentence, which creates liability based upon a violation of a local or county ordinance and requires no proof of scienter. As amended, OCGA § 51-2-7 allows cities and counties, if they wish, to afford a higher degree of protection to people than allowed at common law. See generally *Fields v. Thompson*, 190 Ga. App. 177, 178 (378 SE2d 390) (1989).[3]

The incident which led to this lawsuit occurred in the City of Roswell, a municipality which has enacted a so-called "leash law." A certified copy of the ordinance was included in the record and reads as follows:

> Any person having custody of a dog within the city limits shall be required to confine the dog on the premises of the owner of the dog or on the premises of someone authorized by the owner. Dogs shall not be permitted to be on any streets, alleys or any other place in the city off the premises of the custodian of the dog, except on a leash not more than six (6) feet long and in the care of a competent person.

City of Roswell Code, § 4-29.

Lori Johnston argues that she did not violate the Roswell ordinance because it merely required that the dogs be "on the premises of the owner." She contends that the ordinance did not require the dogs to be "at heel or on a leash" at the time of the attack and, therefore, she may not be held liable under OCGA § 51-2-7. Additionally, Lori Johnston argues that the dogs were technically on the premises of their owners when Agneta Warendh was injured, so no violation of the ordinance occurred.

We disagree. First, we find that the statute contemplates restrictive ordinances such as the one in this case. We further conclude that a jury issue remains as to whether the dogs were running at large in violation of the Roswell ordinance.

---

[3] Densely populated cities, for example, may elect to provide additional protection to humans, while rural counties may not see a need for additional regulations. Having different liability standards in different parts of the state is reminiscent of the division of the state in earlier times into "fence counties" and "no-fence counties," also known as stock counties. See generally 1933 Code § 62-501 et seq.; *Central R. v. Hamilton*, 71 Ga. 461 (1883); *McKenzie v. Powell*, 68 Ga. App. 285, 286 (22 SE2d 735) (1942).

In *Tutak v. Fairley*, 198 Ga. App. 307 (401 SE2d 73) (1991), we reversed a grant of summary judgment in a similar case and found that a jury issue remained as to whether a Glynn County ordinance prohibiting dogs from running at large had been violated and whether a dog's owners should be held liable for injuries caused by the animal. In that case, a dog broke loose from a chain in the owners' backyard, ran into their front yard, and bit a child. Id. We found that "[a]lthough the animal may have been physically within the boundaries of the appellees' property at the time, it clearly was not 'confined' there." Id. at 308. Cf. *Clark*, 242 Ga. App. at 422 (1) (Camden County ordinance specifically defined "confined" as being " 'merely on the property of the owner' ") (emphasis omitted).

Similarly, the ordinance in the case at bar requires a person having custody of a dog to "*confine* the dog on the premises of the owner of the dog or on the premises of someone authorized by the owner." (Emphasis supplied.) Roswell Code, § 4-29. There was evidence that the dogs were not confined at the time of the attack, as they ran through the door and were loose in the front yard. Thus, the evidence of record does not negate the allegation that the dogs were in violation of the applicable ordinance, and whether Lori Johnston should be held liable under OCGA § 51-2-7 is a jury issue. The trial court properly denied Lori Johnston's motion for summary judgment.

2. In addition, the appellees attempt to raise a jury issue under the first sentence of OCGA § 51-2-7 by arguing that Lori Johnston had scienter because she deposed that she had heard people say that Rottweilers are "aggressive dogs." They buttress their argument by attaching to their appellate brief copies of miscellaneous pieces of information, apparently gleaned from the Internet, and a newspaper article, Erin McClam, "Rottweilers Take Lead in Fatal Attacks by Dogs," Atlanta Journal, September 16, 2000, p. A3. The unauthenticated exhibits assert, inter alia, that there were 13 dog bite-related fatalities in Georgia between 1979 and 1996 and that Rottweilers were involved in more fatalities than any other breed.

Exhibits attached to briefs on appeal are not part of the record and cannot be considered as evidence. *SurgiJet, Inc. v. Hicks*, 236 Ga. App. 80, 82 (4) (511 SE2d 194) (1999). There is no showing in the record that the defendants had knowledge of any of the statistics asserted in the various hearsay articles and on the various Web pages. Moreover, Georgia law has, in the past, adhered to a rule that the breed of a dog is irrelevant to liability. *Stanger v. Cato*, 182 Ga. App. 498 (356 SE2d 97) (1987) (Doberman pinscher).

Our Georgia statute addresses injuries caused by vicious or dangerous animals. OCGA § 51-2-7. "A vicious animal is any individual of a vicious species, or a vicious individual of a harmless species." *Phillips v. DeWald*, 79 Ga. 732, 735 (7 SE 151) (1887). Traditionally,

courts have presumed all dogs to be of a harmless species and hence required proof of the dangerous nature of a particular dog and proof of his owner's knowledge of that individual's deviation from presumptive harmlessness. See, e.g., *Montgomery v. Maryland Cas. Co.*, 169 Ga. 746, 748 (151 SE 363) (1930); *Patton v. State*, 93 Ga. 111, 112 (19 SE 734) (1893).

The appellees' exhibits about Rottweilers and dog bites are evidently offered to rebut Georgia's longstanding judicial insistence that dogs are a harmless species of animal regardless of breed. But previous efforts to change the common law of dog bites, especially in view of the 1985 legislative changes to OCGA § 51-2-7, have not persuaded a majority of the judges of this Court. See, e.g., *Clark*, 242 Ga. App. at 423 (Ruffin, J., concurring specially); *Supan v. Griffin*, 238 Ga. App. 404, 407 (519 SE2d 22) (1999) (Andrews, J., dissenting); *Hamilton v. Walker*, 235 Ga. App. 635, 637 (510 SE2d 120) (1998) (Banke, Senior Appellate Judge, dissenting). See generally Andrist, Note: Is There (and Should There Be) Any "Bite" Left in Georgia's "First Bite" Rule?, 34 Ga. L. Rev. 1343 (2000) (arguing to retain traditional Georgia "first bite" rule). Even if we were able to consider the exhibits attached to appellees' brief, they would not be an adequate record to support the argument that the defendants should have known of the dogs' dangerousness.[4] The present record does not raise a jury issue as to liability under the first sentence of OCGA § 51-2-7.

3. A judgment should be affirmed if it is right for any reason. The appellees argue that we should affirm because they asserted a claim in negligence in addition to their statutory claims under OCGA § 51-2-7. The appellees are correct that the decision on which they rely, *Callaway v. Miller*, 118 Ga. App. 309 (163 SE2d 336) (1968), squarely holds that OCGA § 51-2-7 is not an exhaustive remedy and that an injured plaintiff can pursue a claim in negligence as well. But only one judge concurred in the judgment, and the decision is, therefore, physical precedent only. The cited precedents from other jurisdictions are not persuasive.

OCGA § 51-2-7 was a codification of the common law as it existed at the time. An extensive common law gloss has been added to the statute over the decades. The appellees have cited no precedent, other than *Callaway*, 118 Ga. App. 309, and we have found none, which provides for liability for dog bites other than OCGA § 51-2-7 and the premises liability statute, OCGA § 51-3-1. See *Webb v. Danforth*, 234 Ga. App. 211, 212 (505 SE2d 860) (1998) (scienter required

---

[4] But see *Sanders v. Bowen*, 196 Ga. App. 644, 646 (2) (396 SE2d 908) (1990) (scienter found from "habits of aggressiveness and attack which common sense says would not be confined to inanimate objects" despite no previous biting of humans); *McBride v. Wasik*, 179 Ga. App. 244 (345 SE2d 921) (1986) (scienter because animal was trained attack dog).

for landowner to be liable). A premises liability claim was not asserted in the case at bar. Liability under OCGA § 51-2-7 has been discussed in Divisions 1 and 2 above. There is no separate claim for negligence.

### Case No. A01A1481

4. We also agree with the trial court that a jury issue exists as to whether Robert Johnston confined his dog as required by the Roswell ordinance. Although Robert Johnston had confined the dog to his home when he left for work, he knew that he did not live alone and that his sister or their roommate could be coming into and going out of the house in his absence. Nevertheless, he took no steps to prevent the dog from having access to the doors leading outside, but rather allowed him to roam freely throughout the house. The evidence showed that the dog weighed around 130 pounds while Lori Johnston weighed something less. Moreover, the dog responded primarily to Robert Johnston's commands. This presents an issue as to whether Lori Johnston could reasonably be expected to keep the dog confined in Robert Johnston's absence. Therefore, the trial court correctly denied Robert Johnston's motion for summary judgment on the issue of whether he complied with the Roswell ordinance. See *Tutak*, 198 Ga. App. at 308.

The dissent notes that Robert Johnston had no prior knowledge that the dog would try to escape. But we have previously found that "[i]f an animal is running at large in violation of a local ordinance when it bites someone, the owner's knowledge of its propensity to bite is immaterial." *Oertel*, 239 Ga. App. at 150 (2). Robert Johnston's knowledge of his dog's propensity to escape is likewise immaterial under the circumstances of this case.

5. Moreover, we find that a jury issue exists on the issue of whether Lori Johnston can be considered Robert Johnston's agent in this instance. "Agency is the relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." (Citation and punctuation omitted.) *Smith v. Merck*, 206 Ga. 361, 368 (1) (a) (57 SE2d 326) (1950). An agency relationship "may refer, and perhaps most often does, to that relation created by express or implied contract or by law, whereby one party delegates the transaction of some lawful business with more or less discretionary power to another, who undertakes to manage the affair and render to him an account thereof." (Citations, punctuation and emphasis omitted.) Id. The existence of an agency can be shown through circumstances, apparent relations, and the conduct of the parties. *Stallings v. Sylvania Ford-Mercury*, 242 Ga. App. 731, 732 (1) (533 SE2d 731) (2000).

Robert Johnston apparently takes the position that confining the dog to the house was adequate under the local ordinance. But because he allowed the dog free access to the house, he necessarily relied upon his sister in his absence to keep the dog from getting out. And the evidence shows that she undertook to do so while she talked to Agneta Warendh. This raises an issue as to whether Lori Johnston acted as her brother's agent in keeping the dogs from escaping. And the fact that Robert Johnston did not rely upon his sister to feed, water, or walk his dogs is not determinative of whether she acted as his agent in keeping the dogs confined.

Accordingly, we affirm the trial court's denial of the Johnstons' motions for summary judgment.

*Judgments affirmed. Blackburn, C. J., Ruffin, Eldridge and Miller, JJ., concur. Andrews, P. J., and Mikell, J., dissent.*

MIKELL, Judge, dissenting.

While I concur in the majority's opinion in Case No. A01A1480, I must respectfully dissent in Case No. A01A1481 as I believe that no jury issue exists as to Mr. Johnston's liability under OCGA § 51-2-7.

1. It is undisputed that when Mr. Johnston left for work, his dog was secure inside his home. Additionally, Mr. Johnston deposed that he had no knowledge of the dogs rushing through the door in the past. Therefore, the Warendhs cannot establish "careless management" or "allowing the animal to go at liberty" on the part of Mr. Johnston, and he is entitled to summary judgment on the OCGA § 51-2-7 claim.

2. Furthermore, contrary to the Warendhs' argument and the majority's opinion, I do not believe that an agency relationship existed between Mr. Johnston and his sister that would result in his liability for the incident. OCGA § 10-6-1 provides: "The relation of principal and agent arises whenever one person, expressly or by implication, authorizes another to act for him or subsequently ratifies the acts of another in his behalf." There is no evidence that Mr. Johnston authorized his sister to act for him or that he somehow ratified any such actions. She may have been a bailee, but there is nothing in the record to show a relationship which would impart vicarious liability to the brother. The record shows that Ms. Johnston attempted to confine the dogs with gates within the home in an effort to protect her furniture; however, such action was taken for her own benefit and did not render her Mr. Johnston's agent. Ms. Johnston deposed that she was very rarely alone with the dogs and that she never fed or walked them. The evidence is thus significantly different from that in *Sanders v. Bowen*, 196 Ga. App. 644-645 (2) (396 SE2d 908) (1990), in which the defendant's sons had been designated to "take care of" their father's pit bulldog, Bad Eye. I reject the

Warendhs' contention that Ms. Johnston acted as her brother's agent by providing water to the dogs on occasion when their owners were not home. Accordingly, I would reverse the partial denial of summary judgment to Robert Johnston.

DECIDED NOVEMBER 30, 2001.

*Gray, Hedrick & Edenfield, Lloyd B. Hedrick, Jr.*, for appellants.
*Gibson, Deal & Fletcher, John W. Gibson*, for appellees.