A07A0037. BURNS v. LEAP.
(645 SE2d 751)

RUFFIN, Judge.

Kathleen D. Burns sued Janet Leap for personal injuries she sustained when she was kicked by a horse boarded by Leap. The trial court granted summary judgment to Leap, and Burns appeals. Finding no error, we affirm.

We conduct a de novo review of the trial court's grant of summary judgment to Leap, construing the evidence and all inferences therefrom in a light favorable to Burns.[1] So viewed, the evidence shows that in November 2002, Burns was interested in purchasing property with acreage and was considering acquiring a horse for her daughter. Burns approached Leap about buying her property, which included a seven-acre tract with a main house, a guest house, paddocks, and a barn. Leap boarded four horses on her property, including two of her own and two owned by her neighbors, Cindy and Scott Suckling.

On November 29, 2002, Burns, her husband, and her two children visited Leap's property. According to Leap, after they toured the

---

houses and the barn, she led the Burns family to the pasture where the horses were located. Burns knew that the horses were in the pasture, but believed that they were contained. Leap and the Burns family went through a gate near the barn that led to the horse run. Burns, who was the last person through the initial gate, failed to close it. After crossing the horse run, the group passed through an open gate that led into the pasture, leaving the gate ajar. Leap whistled, the horses approached, and Burns and her children petted them.

Thereafter, Leap asked whether Burns closed the gate and Burns replied that she had not. Burns offered to close it and Leap agreed, instructing Burns to "walk slowly." As Burns was walking, one of the horses trotted toward her. Burns testified that Leap yelled "[Do not] let the horse out." Leap recalls that she told Burns to "shoo" the horse, and Burns testified that Leap instructed her to "put [her] arms up." Burns raised her arms, and that horse turned around. As Burns turned around and continued walking toward the gate, a second horse, Zelda, ran toward her. According to Burns, Leap again screamed, "[Do not] let the horse out." Burns raised her arms and ran toward the fence. The horse continued to run toward her and knocked her into a barbed wire fence, resulting in injury to Burns's face, eye, scalp, wrist, and back.

Burns filed suit, claiming that Leap was negligent in failing to ensure that the gates were closed, asking Burns to close the gate, instructing Burns to attempt to wave her arms at the two horses to divert them, failing to advise Burns to flee the area, and failing to warn Burns of the dangers in the pasture.[2] Leap filed a motion for summary judgment, arguing that: (1) Burns failed to produce evidence of the horse's vicious propensity; (2) Leap was immune from liability under the Injuries From Equine Activities Act;[3] (3) Burns assumed the risk of injury; and (4) no act or omission by Leap proximately caused Burns's injuries. In support of her motion, Leap filed her affidavit in which she stated that she had boarded Zelda for "many years" and had never observed the horse "exhibit the propensity to run directly at any person or . . . exhibit any violent, vicious, or dangerous behavior." Leap had no knowledge of Zelda ever "rearing up, kicking, pushing, attacking, charging[,] or harming another human being."

1. Burns contends that the trial court erred in granting summary judgment to Leap. We disagree. OCGA § 51-2-7, which addresses

---

[2] Burns also named the Sucklings as defendants in the lawsuit, but she dismissed them without prejudice thereafter.

[3] See OCGA § 4-12-1 et seq.

injuries caused by vicious or dangerous animals, provides in pertinent part that "[a] person who owns or keeps a vicious or dangerous animal of any kind and who, by careless management or by allowing the animal to go at liberty, causes injury to another person who does not provoke the injury by his own act may be liable in damages to the person so injured." To prevail on a claim for damages for injuries caused by a horse, "it is necessary to show that the horse was vicious and that the owner had knowledge of that fact."[4] Here, there is no evidence whatsoever that Leap was aware of any vicious propensity on the part of the horse. Indeed, Burns effectively concedes this point in her brief. Thus, the trial court did not err in granting summary judgment to Leap.[5]

2. Burns cites *Callaway v. Miller*[6] for the proposition that she can pursue a negligence claim, notwithstanding the lack of any evidence that Leap had knowledge of the horse's dangerous propensities. Burns is correct that *Callaway v. Miller* holds that the dangerous animal statute does not provide "an exclusive basis for recovery when injury is caused by a domestic animal."[7] However, as this Court has noted, the *Callaway v. Miller* decision is physical precedent only and therefore not binding.[8] "[Burns] ha[s] cited no precedent, other than *Callaway [v. Miller]*, and we have found none, which provides for liability for [injuries by horses] other than OCGA § 51-2-7 and the premises liability statute, OCGA § 51-3-1."[9]

Assuming that Burns was entitled to pursue a premises liability claim, any such claim fails as a matter of law, as she was "still required to come forward with evidence of the vicious propensity of the [horse] in order to show the dangerous condition of which the premises owner had superior knowledge."[10] As set forth in Division 1, Burns failed to produce any such evidence. Accordingly, this argument presents no basis for reversal.[11]

---

[4] (Punctuation omitted.) *McNish v. Gilbert*, 184 Ga. App. 234, 235 (361 SE2d 231) (1987).

[5] See *Browder-Manget Co. v. Calhoun Brick Co.*, 138 Ga. 277 (75 SE 243) (1912); *Reed v. Southern Express Co.*, 95 Ga. 108 (22 SE 133) (1894); *McNish*, supra; *Rodriguez v. Newby*, 131 Ga. App. 651, 653-654 (2) (206 SE2d 585) (1974); *Chandler v. Gately*, 119 Ga. App. 513, 518-519 (2) (167 SE2d 697) (1969).

[6] 118 Ga. App. 309 (163 SE2d 336) (1968).

[7] Id. at 310-311 (1).

[8] See Court of Appeals Rule 33 (a); *Johnston v. Warendh*, 252 Ga. App. 674, 678-679 (3) (556 SE2d 867) (2001).

[9] *Johnston*, supra.

[10] *Pickard v. Cook*, 223 Ga. App. 595, 596 (2) (478 SE2d 432) (1996) (to prevail on a negligence theory, plaintiff was required to show that injury was caused by a defective condition on defendant's property, of which defendant had knowledge).

[11] See *Johnston*, supra; *Pickard*, supra.

3. A judgment should be affirmed if right for any reason.[12] Therefore, in light of our holdings in Divisions 1 and 2, we need not address Burns's remaining enumerations.

*Judgment affirmed. Blackburn, P. J., and Bernes, J., concur.*

DECIDED MAY 9, 2007.

*Sharon T. McCoy, Lance T. McCoy,* for appellant.
*Hawkins & Parnell, Peter R. York,* for appellee.

---

[12] See *Johnston,* supra at 678.