### A08A1104. CUSTER et al. v. COWARD et al.

(667 SE2d 135)

MILLER, Judge.

After their five-year-old daughter Mikayla was bitten by a dog owned by Joffery and Latoya Coward, Christopher and Shelley Custer brought the current action, seeking compensatory and punitive damages. They now appeal from the trial court's order granting summary judgment to the Cowards. The Custers argue that the trial court erred in (1) holding that the dog's prior act of aggression did not place the appellees on notice of the likelihood that the dog would bite someone; (2) finding that the appellees could not be liable because the dog had not actually bitten someone before the incident in question; and (3) finding that the appellees did not owe a duty of ordinary care pursuant to OCGA § 51-3-1 to protect Mikayla from the dog. The Custers also appeal the trial court's order finding that it was without jurisdiction to consider their motion for leave to add the dog's previous owner, Stephanie Smiegowski, as a defendant.[1] Discerning no error, we affirm.

---

[1] Appellants concede that if summary judgment was correctly granted, venue would not be proper as to Smiegowski and their motion for leave must be denied. However, appellants argue that if summary judgment is reversed, the case should be remanded with instructions to consider the motion for leave to add Smiegowski as a defendant.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant. [Cit.]

*Green v. Raw Deal, Inc.*, 290 Ga. App. 464, 465 (659 SE2d 856) (2008).

So viewed, the evidence shows that on June 3, 2006, Shelley Custer and her three children were visiting their neighbor, Latoya Coward, and her children at the Cowards' home in McDonough. Shelley and Latoya permitted the children to go inside the house while they conversed on the front lawn. Thereafter, Brandon Beane, the Cowards' 11-year-old son, went to the back yard to jump on the trampoline. The Custers' daughters, Mikayla and Katelynn, joined Brandon in jumping on the trampoline, as did Butkus, the Cowards' Cane Corso dog. While on the trampoline, Mikayla fell onto the dog, which then bit into her leg and would not let go for a few minutes.

Stephanie Smiegowski, Butkus' previous owner, had purchased the dog from a breeder when Butkus was four months old. A few months later, Smiegowski noticed that the dog's front leg would tremor once a week or so. Several months thereafter, the dog developed a limp in his left hind leg. Smiegowski then returned the dog to the breeder, but reclaimed him when the breeder was faced with euthanizing the dog because he could not find a proper home for it.

On December 13, 2005, Smiegowski took the dog to Dr. Sidney Tison of the Cumberland Veterinary Clinic for an evaluation of Butkus' limping problem. Dr. Tison gave a "likely diagnosis" of Wobbler's Syndrome,[2] which he suggested be treated with aspirin. As Dr. Tison was not a specialist and had little experience with Cane Corsos or with Wobbler's Syndrome, his diagnosis was admittedly merely "suggestive" and was based more on the dog's health history than on the results of the physical exam. Dr. Tison spoke with a Cane Corso breeder to learn more about Wobbler's Syndrome; the breeder told him that she had seen three cases of the condition, all of which "ended badly." He was informed that two of those dogs had to be euthanized because of "aggression towards the other dogs, likely from the pain." However, Dr. Tison testified that in his experiences treating Wobbler's Syndrome, the pain increase suffered by dogs

---

[2] Wobbler's Syndrome is the common name for cranial neck instability in which there is pinching of the spinal nerves, leading to pain and weakness in the front and rear legs.

with the condition was slight, that the dogs had not become more aggressive, and that they were euthanized years after the initial diagnosis because they could not move their legs effectively, rather than because of pain. Dr. Tison also testified that he did not believe that Butkus would develop an aggression problem, and he told Smiegowski that aggression was not a concern at the time.

A few months later, Smiegowski decided to give the dog away and posted an advertisement on the internet. On May 1, 2006, Joffery Coward adopted the dog. Smiegowski told Coward that Butkus had a limp, and to give the dog aspirin if it was in pain. Smiegowski did not mention that the dog had been diagnosed with Wobbler's Syndrome, and the dog showed no signs of aggression. Coward neither saw the veterinary records nor talked with Dr. Tison before the biting incident.

The Cowards' daughter, Tiffany, who was eight years old at the time of the incident, testified that Butkus once growled at her when she pretended to throw a ball at him, and her father then told her to go inside the house. Latoya Coward testified that Butkus had also barked or growled on a few other occasions. There is no evidence in the record that the dog had ever bitten or attempted to bite anyone before it bit Mikayla Custer.

1. The Custers first argue that the trial court improperly granted summary judgment because the Cowards were placed on notice of the dog's vicious propensity when it growled at Tiffany Coward. We disagree.

OCGA § 51-2-7 provides:

A person who owns or keeps a vicious or dangerous animal of any kind and who, by careless management or by allowing the animal to go at liberty, causes injury to another person who does not provoke the injury by his own act may be liable in damages to the person so injured. In proving vicious propensity, it shall be sufficient to show that the animal was required to be at heel or on a leash by an ordinance of a city, county, or consolidated government, and the said animal was at the time of the occurrence not at heel or on a leash.

The Custers do not allege, nor is there evidence suggesting, that the Cowards were violating any such ordinance. Moreover, to prevail on their claim, the Custers were required to show that Butkus had the propensity to bite and that the Cowards had knowledge of that propensity. See *Raith v. Blanchard*, 271 Ga. App. 723, 724 (1) (611 SE2d 75) (2005). "Although this traditionally has been described as Georgia's 'first bite rule,' the rule does not literally require a first

bite. Instead, the true test of liability is the owner's superior knowledge of his dog's temperament." (Citation and punctuation omitted.) Id.

In *Hamilton v. Walker*, 235 Ga. App. 635 (510 SE2d 120) (1998), we affirmed the trial court's order granting summary judgment to the defendant dog owner, finding as a matter of law that the plaintiff could not prove the dog's vicious propensity where it had never previously attacked or bitten a human. Id. at 636. Similarly, there is no evidence here that Butkus had ever previously attacked or bitten a human. Moreover, the few occasions where Butkus growled do not constitute notice to the Cowards of the dog's propensity to bite. See *Raith*, supra, 271 Ga. App. at 726 (2) ("a dog's growl does not put the dog owner on notice of the dog's propensity to bite").

The Custers argue that the dog's leg condition somehow put the Cowards on notice of its vicious propensity. Again, however, there is no evidence that Butkus had bitten or attempted to bite anyone before the incident. Also, Dr. Tison testified that he did not think the dog would become more aggressive and told this to Smiegowski. There was no reason for the Cowards to believe that the dog's leg condition would make it more likely to attack humans. Therefore, the trial court did not err in finding that the Cowards had no superior knowledge of the dog's propensity to bite, and the Custers' first and second enumerations of error are without merit.

2. The Custers argue that the trial court erred in granting summary judgment to the Cowards on their premises liability claim under OCGA § 51-3-1.[3] We disagree.

> In a typical dog bite case, regardless of whether the cause of action is based on the premises liability statute (OCGA § 51-3-1) or the dangerous animal liability statute (OCGA § 51-2-7), a plaintiff must produce evidence of the vicious propensity of the dog in order to show that the owner of the premises had superior knowledge of the danger. [Cit.]

*Osowski v. Smith*, 262 Ga. App. 538, 539-540 (1) (586 SE2d 71) (2003). As set forth in Division 1, supra, the Custers have failed to produce evidence of Butkus' vicious propensity or the Cowards' knowledge thereof. Therefore, the trial court did not err in granting summary judgment to the Cowards on their premises liability claim.

3. Finally, the Custers argue that the trial court erred in refusing

---

[3] That Code section applies to invitees and provides: "Where an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe." OCGA § 51-3-1.

YALE LAW LIBRARY

to consider their motion to add Stephanie Smiegowski as a defendant. The Custers admit that if summary judgment is upheld, venue as to Smiegowski would be improper. As set forth in Divisions 1 and 2, supra, we find no error in the trial court's grant of summary judgment to the Cowards. Accordingly, we need not address this enumeration of error.

*Judgment affirmed. Blackburn, P. J., and Ellington, J., concur.*

DECIDED AUGUST 15, 2008.

*Rogers & Goldberg, Michael L. Goldberg, Zevin & Rosenbloum, Michael D. Rosenbloum*, for appellants.

*Swift, Currie, McGhee & Hiers, Lynn M. Roberson*, for appellees.