**FOURTH DIVISION**
**DILLARD, C. J.,**
**RAY, P. J., and SELF, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 4, 2017**

# In the Court of Appeals of Georgia

A17A0734. MATTA-TRONCOSO et al. v. TYNER.

DILLARD, Chief Judge.

After Maria Matta-Troncoso sustained severe injuries in an attack by two dogs, she and her husband ("plaintiffs") filed a lawsuit against Michael and Lakeisha Thornton, the dogs' owners, and Gregory Tyner, the Thorntons' landlord, alleging that her injuries were a result of the Thorntons failing to prevent their dogs from escaping their fenced back yard and Tyner's failure to keep a latch on the fence's gate in good repair. Tyner moved for summary judgment, which the trial court granted. On appeal, the plaintiffs contend that the trial court erred in holding that summary judgment for Tyner was warranted because they failed to produce evidence that the Thorntons' dogs had previously exhibited vicious propensities. For the reasons set forth *infra*, we reverse.

Viewed in the light most favorable to the nonmovant,[1] the record shows that Tyner owns a house located at 108 Ivy Trace in Stockbridge, Henry County, Georgia. Initially, Tyner lived in the home, but on December 6, 2008, he entered into an agreement to lease the property to Michael and Lakeisha Thornton, and shortly thereafter, the couple and their three children moved into the home. The couple also owned a Labrador Retriever, but the lease specifically allowed pets, and the property had a fairly large back yard, which was enclosed by a wooden privacy fence and accessible via the house's back door and a gate that opened on to the front yard.

A few months after the Thorntons moved into the home, a lawn-care service provider broke the latch to the front gate of the fence. Michael Thornton notified Tyner that the latch had been broken within a few days after it happened, but Tyner never repaired it, and Michael admittedly never followed up with any subsequent requests for Tyner to do so. Instead, Michael began securing the front gate by tightly tying a dog leash around the top posts of the gate and the abutting part of the fence,

---

[1] *See Martin v. Herrington Mill, LP*, 316 Ga. App. 696, 697 (730 SE2d 164) (2012) ("[A] de novo standard of review applies to an appeal from a grant or denial of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant." (punctuation omitted)).

and by placing weights and a cement block at the base of the gate to stop it from swinging open.

Nevertheless, a few years after they had been living in the leased home, the Thorntons' Labrador Retriever escaped from their back yard and was fatally struck by a car. Subsequently, the Thorntons adopted two Pit Bull Terrier puppies, which—like their previous dog—they kept outside in the back yard during the day and crated in the basement of the home at night. Over the course of the next two years, neither of the two dogs ever displayed any aggressive behavior, and in fact, the Thorntons were comfortable allowing their children and young nieces to play with them.

In the early afternoon of October 24, 2013, Maria Matta-Troncoso, who lived a few blocks away from the Thorntons, was walking her two small dogs in the neighborhood when the Thorntons' two dogs—who had obviously escaped from their back yard—raced toward her and began attacking her dogs. One of her dogs fled, but in attempting to defend her other pet, Troncoso picked it up and shielded it in her arms, at which point the two Pit Bulls knocked Troncoso to the ground and began attacking her as well. A neighbor quickly called the police, and within minutes, an officer responded to the scene. Initially, the officer attempted to stop the attack on

3

Troncoso by kicking the dogs. But when this proved unsuccessful, the officer fatally shot both of them. The responding officer and another officer, who had just arrived, began administering first aid to Troncoso, who, shortly thereafter, was airlifted to the hospital.

Not long after the attack ended, Lakeisha Thornton arrived home, saw that the front gate to the fence was open, and that the dogs had escaped. She then began driving around the neighborhood to look for them. Almost immediately, she encountered a police officer, who told her that he was looking for a dog but provided no additional details. A few minutes later, she came upon a television news reporter and asked him why he and the police were in the neighborhood. The reporter informed her that two dogs had attacked a woman, and based on his description of the dogs, Lakeisha feared that her pets were responsible. Lakeisha then called Michael, who was at work, and informed him of what had transpired.

Following his wife's phone call, Michael came home, and after speaking with one of the police officers and viewing photographs of the dogs the officer had shot, he confirmed that the dogs involved in the attack belonged to him. A few months later, the State charged Michael, via accusation, with four counts of violating Henry County ordinances pertaining to keeping a vicious animal, failing to provide a collar

4

and display of current vaccination tag for an animal, failing to keep an animal under restraint, and allowing an animal to become a public nuisance. Ultimately, he pleaded guilty to all charges.

Thereafter, Troncoso and her husband filed a lawsuit against the Thorntons, alleging that she suffered injuries as a result of the Thorntons' failure to prevent their dogs from escaping their fenced back yard and attacking her. Later, the plaintiffs amended their complaint to add Tyner as a defendant, alleging that Troncoso's injuries were also a result of Tyner's failure to keep the latch on the fence's gate in good repair. Both the Thorntons and Tyner filed answers.

Upon the conclusion of discovery, Tyner filed a motion for summary judgment, arguing that the plaintiffs failed to present any evidence showing that his failure to repair the gate's latch was the proximate cause of Troncoso's injuries. Subsequently, the plaintiffs filed a response. After considering these written submissions, the trial court granted summary judgment in Tyner's favor, finding that Tyner breached a duty to keep the premises in good repair but that summary judgment was nevertheless warranted because the plaintiffs presented no genuine issue of material fact showing that the Thortons' dogs had ever displayed vicious propensities or that Tyner had knowledge of same. This appeal follows.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[2] If summary judgment is granted by a trial court, it enjoys no presumption of correctness on appeal, "and an appellate court must satisfy itself de novo that the requirements of OCGA § 9-11-56 (c) have been met."[3] Moreover, in our *de novo* review of a trial court's grant of a motion for summary judgment, we are charged with "viewing the evidence, and all reasonable conclusions and inferences drawn from the evidence in the light most favorable to the nonmovant."[4] With these guiding principles in mind, we turn now to the plaintiffs' specific claims of error.

The plaintiffs contend that the trial court erred in granting summary judgment in favor of Tyner, specifically arguing that the court misconstrued the applicable law

---

[2] OCGA § 9-11-56 (c).

[3] *Cowart v. Widener*, 287 Ga. 622, 624 (1) (a) (697 SE2d 779) (2010); *accord Benefield v. Tominich*, 308 Ga. App. 605, 607 (1) (708 SE2d 563) (2011).

[4] *Holcomb v. Long*, 329 Ga. App. 515, 517 (765 SE2d 687) (2014) (punctuation omitted).

in holding that no genuine issues of material fact showed that the Thorntons' dogs previously exhibited vicious propensities. We agree.

OCGA § 51-2-7 "sets forth the liability of owners of vicious or dangerous animals for injuries caused by those animals,"[5] providing that

> [a] person who owns or keeps a vicious or dangerous animal of any kind and who, by careless management or by allowing the animal to go at liberty, causes injury to another person who does not provoke the injury by his own act may be liable in damages to the person so injured. In proving vicious propensity, it shall be sufficient to show that the animal was required to be at heel or on a leash by an ordinance of a city, county, or consolidated government, and the said animal was at the time of the occurrence not at heel or on a leash. . . .[6]

Accordingly, under this Code section, a plaintiff must show that "(1) the owner carelessly managed or allowed the animal to go at liberty; (2) the animal was vicious or unrestrained at the time of the injury in violation of a local ordinance requiring such restraint; and (3) the animal caused the injury."[7] And importantly, OCGA § 51-

---

[5] *Stennette v. Miller*, 316 Ga. App. 425, 426-27 (1) (729 SE2d 559) (2012) (punctuation omitted).

[6] OCGA § 51-2-7.

[7] *Cowan v. Carillo*, 331 Ga. App. 387, 389 (1) (771 SE2d 86) (2015); *see Stennette*, 316 Ga. App. at 427 (1) (noting that "[u]nless there is evidence that the

2-7 "relieves a plaintiff from producing evidence of a dog's vicious propensity based on evidence of a violation of an ordinance that requires a dog to be at heel or on a leash."[8]

In its order granting summary judgment in this matter, the trial court focused on whether the Thorntons' dogs had ever displayed any vicious propensities, finding that the plaintiffs presented no genuine issues of material fact that they had. But because the plaintiffs alleged in their complaint—and noted in their response to Tyner's motion for summary judgment—that the dogs were running at large in the neighborhood unrestrained, in violation of the Code of Henry County Article I, Section 3-4-9, Subsections (2), (3), (5), and (8), when they attacked Troncoso, the

---

animal was not 'at heel or on a leash' as required by local ordinance at the time of the incident, a plaintiff in a dog bite case under OCGA § 51-2-7 must show that the owner had knowledge that the dog had the propensity to commit the act that caused the injury" (punctuation omitted)).

[8] *Cowan*, 331 Ga. App. at 389 (1); *see Abundant Animal Care, LLC v. Gray*, 316 Ga. App. 193, 196 (1) (728 SE2d 822) (2012) (holding that OCGA § 51-2-7 "relieves a plaintiff from producing evidence of a dog's vicious propensity based on evidence of a violation of an ordinance that restricts dogs from running at large" (punctuation omitted)); *Oertel v. Chi Psi Fraternity*, 239 Ga. App. 147, 149 (2) (521 SE2d 71) (1999) (holding that "[t]he clear and unambiguous language of OCGA § 51-2-7 establishes that the vicious propensity of an animal may be proved by showing that the animal was required to be 'at heel or on a leash by an ordinance' of the applicable governmental body and that the animal at the time of the occurrence was not at heel or on a leash").

rule requiring evidence that the Thorntons and Tyner were aware of the dogs' vicious propensities is not implicated here, and therefore, the trial court's focus in this regard was misplaced.[9]

Nevertheless, Tyner counters that the trial court did not err in granting summary judgment in his favor, arguing that the court properly did not consider the Henry County ordinance because the plaintiffs failed to provide a copy of the ordinance for the record.[10] Tyner is, of course, correct that "judicial notice can not be taken by the superior court or this [C]ourt of city or county ordinances, but they must be alleged and proved."[11] And the proper method of proving a city ordinance is "by

---

[9] *Oertel*, 239 Ga. App. at 148 (2) (holding that because plaintiffs alleged that fraternity's dog was running at large in violation of the local ordinance when he bit plaintiff "we are not concerned with whether the defendants were otherwise aware of [dog's] alleged vicious propensities").

[10] *See Cormier v. Willis*, 313 Ga. App. 699, 701 (1) (722 SE2d 416) (2012) (holding that because the record did not contain proper proof of the local ordinance that allegedly established more stringent liability for dog owners, any argument based on ordinance's language provided no basis for reversal of grant of summary judgment).

[11] *Thorsen v. Saber*, 288 Ga. 18, 19 (1) (701 SE2d 133) (2010) (punctuation omitted); *accord Cormier*, 313 Ga. App. at 700-01 (1).

production of the original or of a properly certified copy."[12] But contrary to Tyner's argument, the plaintiffs' "burden was only to point to specific evidence giving rise to a triable issue."[13] Indeed, their obligation was to "come forward with evidence raising a material issue of fact, not to prove conclusively the fact that is for the jury to decide."[14] Furthermore, courts should treat the nonmovant's response "with considerable indulgence."[15]

Here, while it was certainly poor practice for the plaintiffs to fail to do something as simple as including a certified copy of the applicable ordinance in the record, they did present evidence of the ordinance via Michael Thornton's deposition. Specifically, Michael testified that he was cited for violating the above-referenced Henry County ordinances, including failure to keep an animal under restraint, and that he pleaded guilty to those violations. Additionally, the accusation charging Michael with these violations was attached as an exhibit to his deposition. Given these

---

[12] *Thorsen*, 288 Ga. at 19 (1) (punctuation omitted); *accord Cormier*, 313 Ga. App. at 701 (1).

[13] *Oertel*, 239 Ga. App. at 150 (2).

[14] *Id.*

[15] *Id.* (punctuation omitted).

particular circumstances, the only reasonable inference that can be drawn from this testimony and the accusation is that a local ordinance exists, which prohibited the Thorntons' dogs from running at large while not on a leash and that when they attacked Troncoso, they were running loose in violation of that ordinance.[16] Accordingly, the trial court erred in granting summary judgment on the ground that the plaintiffs failed to produce evidence that the Thorntons' dogs had ever displayed any vicious propensities.[17]

Asserting essentially a right-for-any-reason argument,[18] Tyner also contends that, regardless of whether the Thorntons may be liable under OCGA § 51-2-7, as an out-of-possession landlord, Tyner cannot be held liable in this matter for the alleged

---

[16] *See id.* at 151-52 (2) (holding that plaintiff met summary judgment burden of raising genuine issue of material fact as to existence of local ordinance that prohibited dog from running at large by including in the record dog owners' deposition testimony acknowledging violations of the ordinance and transcript of hearing in which owners pleaded guilty to such violations).

[17] *See id.* (reversing trial court's grant of summary judgment given that plaintiff produced some evidence of local ordinance under the requirements of OCGA § 51-2-7).

[18] *See Walleye, LLC v. City of Forest Park*, 322 Ga. App. 562, 563 (745 SE2d 781) (2013) ("A grant of summary judgment must be affirmed if right for any reason, whether stated or unstated. It is the grant itself that is to be reviewed for error, and not the analysis employed." (punctuation omitted)).

negligence of his tenants. Specifically, Tyner argues that he owes no duty to the plaintiffs and that they failed to show proximate cause. But these arguments lack merit.

It is undisputed that Tyner is an out-of-possession landlord with respect to the Thorntons' residence. And Tyner is correct that "[a] landlord's liability to a third person who is injured on property which was relinquished by rental or under a lease is determined by OCGA § 44-7-14,"[19] which provides:

> Having fully parted with possession and the right of possession, the landlord is not responsible to third persons for damages resulting from the negligence or illegal use of the premises by the tenant; provided, however, the landlord is responsible for damages arising from defective construction or for damages arising from the failure to keep the premises in repair.

The Code section, therefore, "makes it clear that a landlord who relinquishes possession of the premises cannot be liable to third parties for damages arising from the negligence of the tenant."[20] Consequently, under OCGA § 44-7-14, Tyner, as an

---

[19] *Colquitt v. Rowland*, 265 Ga. 905, 906 (1) (463 SE2d 491) (1995); *accord Martin v. Johnson-Lemon*, 271 Ga. 120, 123 (1) (516 SE2d 66) (1999); *Younger v. Dunagan*, 318 Ga. App. 554, 554 (733 SE2d 81) (2012).

[20] *Colquitt*, 265 Ga. at 906 (1).

out-of-possession landlord, could not be held liable for "damages in tort to [the plaintiffs], unless [the plaintiffs] could establish that [their] damages were attributable to [Tyner's] defective construction of the premises or his failure to keep the premises in repair."[21]

Tyner contends that he owed no duty to the plaintiffs because OCGA § 44-7-14 only establishes landlord liability for injuries that occurred *on* the leased premises. But in considering the meaning of a statute, our charge as an appellate court is to "presume that the General Assembly meant what it said and said what it meant."[22] Thus, we must afford the statutory text its "plain and ordinary meaning, consider the text contextually, [and] read the text in its most natural and reasonable way, as an ordinary speaker of the English language would[.]"[23] Doing so here, we note that, contrary to Tyner's argument, the statute does not limit a landlord's liability to

---

[21] *Ranwez v. Roberts*, 268 Ga. App. 80, 82 (1) (601 SE2d 449) (2004); *see Martin*, 271 Ga. at 123 (2) (holding that out-of-possession landlord cannot be held liable for damages in tort resulting from a third party's use of the swimming pool, unless it is shown that the damages occurred due to landlord's failure to repair the pool, or due to his defective construction of the pool).

[22] *Deal v. Coleman*, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013) (punctuation omitted); *accord Holcomb*, 329 Ga. App. at 517 (1).

[23] *Holcomb*, 329 Ga. App. at 517-18 (1) (citations and punctuation omitted).

13

injuries occurring *on* the premises. Rather, it provides that the "landlord is responsible for damages *arising* from defective construction or for damages *arising* from the failure to keep the premises in repair."[24] And the term "arise" means, *inter alia*, "[o]f circumstances viewed as results: To spring, originate, result from."[25] In this matter, as previously noted, there is evidence that the Thorntons informed Tyner that the latch on the fence's front gate was broken. Indeed, Tyner concedes that his knowledge regarding the latch is assumed for the purposes of summary judgment. Given that the plaintiffs allege Troncoso's injuries were a result of the broken latch, which Tyner allegedly failed to repair, allowing the dogs to escape, her injuries arguably arose from a duty Tyner owed to her but failed to fulfill.

Moreover, Tyner's contention that the plaintiffs failed to show proximate cause is similarly without merit. It is well settled that proximate cause is "that which, in the natural and continuous sequence, unbroken by other causes, produces an event, and without which the event would not have occurred."[26] And what amounts to proximate

---

[24] *See* OCGA § 44-7-14 (emphasis supplied).

[25] The Compact Oxford English Dictionary 70 (2d ed. 1991)

[26] *Zwiren v. Thompson*, 276 Ga. 498, 500 (578 SE2d 862) (2003) (punctuation omitted).

14

cause is "undeniably a jury question and is always to be determined on the facts of each case upon mixed considerations of logic, common sense, justice, policy, and precedent."[27] Here, there exists a genuine issue of material fact as to whether Troncoso's injuries arose from the Thorntons' dogs escaping their enclosure and then attacking Troncoso as a result of Tyner's failure to repair the latch on the fence's front gate.[28] Accordingly, any grant of summary judgment in favor of Tyner on this ground would have been error.

For all of these reasons, we reverse the trial court's grant of summary judgment in this matter.

*Judgment reversed. Ray, P. J., and Self, J., concur.*

---

[27] *Id.* (punctuation omitted); *see Hayes v. Crawford*, 317 Ga. App. 75, 79 (730 SE2d 26) (2012) (questions of "proximate cause and whose negligence constituted the proximate cause of the plaintiff's injuries are, except in plain, palpable and indisputable cases . . . ." (punctuation omitted)).

[28] *See Demarest v. Moore*, 201 Ga. App. 90, 92 (2) (410 SE2d 191) (1991) (holding that genuine issues of material fact existed as to whether landlord was negligent in failing to change locking mechanism screws after neighborhood watch meeting and prior to burglary, and whether intervening burglary was reasonably foreseeable, precluding summary judgment in action brought by tenants); *see also Ranwez*, 268 Ga. App. at 82-83 (1) (noting, albeit in *dicta*, that plaintiff had failed to adequately allege a claim under OCGA § 44-7-14 against landlord defendant given that she did not allege that attack by tenants' dogs was a result of landlord's failure to keep premises in repair).