305 Ga. 480
FINAL COPY

S18G0364.  TYNER v. MATTA-TRONCOSO et al.

WARREN, Justice.

On January 8, 2014, Maria Matta-Troncoso and her husband, Mario Matta ("the Mattas"), sued Michael and Lakeisha Thornton, alleging that the Thorntons were liable under OCGA § 51-2-7[1] for injuries that Matta-Troncoso sustained when the Thorntons' dogs attacked her as she was walking her own dogs approximately two blocks away from the Thorntons' rental house.  On August 20, 2014, the Mattas amended their complaint by adding Gregory B. Tyner, the Thorntons' landlord, alleging that he was liable under OCGA § 44-

---

[1] The relevant part of that statute provides:

A person who owns or keeps a vicious or dangerous animal of any kind and who, by careless management or by allowing the animal to go at liberty, causes injury to another person who does not provoke the injury by his own act may be liable in damages to the person so injured. In proving vicious propensity, it shall be sufficient to show that the animal was required to be at heel or on a leash by an ordinance of a city, county, or consolidated government, and the said animal was at the time of the occurrence not at heel or on a leash. . . .

OCGA § 51-2-7.

7-14[2] for failing to keep the rental property in repair. Specifically, they alleged that Tyner failed to repair a broken gate latch that allowed the Thorntons' dogs to escape the property and attack Matta-Troncoso. Tyner filed a motion for summary judgment,[3] and the trial court determined that although Tyner breached his duty to keep the premises in repair by failing to repair the broken gate latch, summary judgment was nevertheless warranted in his favor because the Mattas made no showing that the Thorntons' dogs had ever displayed vicious propensities or that Tyner had knowledge of such tendencies. On appeal, the Court of Appeals reversed the trial court's ruling that Tyner was entitled to summary judgment. It concluded that the trial court erred in its analysis of whether Tyner had knowledge of the dogs' vicious propensities. Citing OCGA § 51-2-7, the Court of Appeals reasoned that because there was evidence that the dogs were unleashed in violation of a local ordinance, the Mattas were not required to produce evidence that "Tyner [was] aware of the

---

[2] OCGA § 44-7-14 provides:
> Having fully parted with possession and the right of possession, the landlord is not responsible to third persons for damages resulting from the negligence or illegal use of the premises by the tenant; provided, however, the landlord is responsible for damages arising from defective construction or for damages arising from the failure to keep the premises in repair.

[3] The Thorntons did not move for summary judgment, and at the time appellate briefs were filed in this case, the Mattas' claims against the Thorntons remained pending in the trial court.

dogs' vicious propensities." *Matta-Troncoso v. Tyner*, 343 Ga. App. 63, 66-68 (806 SE2d 10) (2017).  The Court of Appeals further concluded that Tyner could be liable under OCGA § 44-7-14 because that statute did not limit a landlord's liability to injuries occurring on a leased premises, and that there existed a genuine issue of material fact as to whether Matta-Troncoso's injuries "arose from" Tyner's failure to repair the gate latch.  Id. at 68-70 (referencing portion of OCGA § 44-7-14 that provides that a "landlord is responsible for damages arising from defective construction or for damages *arising from* the failure to keep the premises in repair") (emphasis supplied).

We granted Tyner's petition for certiorari and posed a single question: Did the Court of Appeals err by reversing the trial court's grant of summary judgment in favor of Tyner?  We answer that question in the affirmative, and therefore reverse the Court of Appeals.

1.  On appeal from a ruling on a motion for summary judgment, we conduct a de novo review, viewing the evidence in the record and all inferences therefrom in the light most favorable to the nonmoving party.  See *Steagald v. Eason*, 300 Ga. 717, 718 n.1 (797 SE2d 838) (2017); *Toyo Tire North America Mfg. v. Davis*, 299 Ga. 155, 161 (787 SE2d 171) (2016).  So viewed, the evidence shows the following.  Tyner leased his house to the Thorntons in

2008. Both the original lease and a subsequent lease allowed the Thorntons to keep pets without any restrictions, and the record shows that Tyner was aware that the Thorntons had a Labrador retriever dog when they first moved into the rental house.

The backyard of the house was enclosed by a wooden privacy fence. The front gate of the fence initially had a latch on it that prevented the gate from opening. Some time after moving in, the Thorntons discovered that a pest-control or lawn-service provider had broken the latch on the front gate. Although the parties presented contradictory evidence about whether the Thorntons ever notified Tyner about the broken latch, Tyner concedes that his knowledge of the broken latch must be assumed for purposes of summary judgment and for this appeal. Tyner never repaired the latch or ordered it to be repaired. Because the latch was broken, the Thorntons began securing the front gate with a tightly tied dog leash and with weights and a cement block at the base of the gate. Some years later, the Thorntons' Labrador retriever escaped from the backyard and was struck and killed by a car. The Thorntons then acquired two pit bull terriers and kept them outside in the backyard during the day and in the home at night. Because there is at least some record evidence indicating that Tyner may have known about the Thorntons' pit bulls, we

assume at this stage that Tyner was aware of the dogs' existence. However, there is no record evidence that the Thorntons' pit bulls displayed aggressive behavior before they attacked Matta-Troncoso, or that Tyner knew the pit bulls had any kind of aggressive temperament or propensity.

On October 24, 2013, Michael Thornton secured the gate as he usually did before leaving the two dogs unattended in the backyard. Matta-Troncoso, who lived a few blocks away from the Thorntons, was walking her two small dogs in the neighborhood when the Thorntons' two pit bulls attacked her dogs. One of her dogs fled. While Matta-Troncoso attempted to defend the other, the Thorntons' dogs knocked Matta-Troncoso to the ground and began attacking her. A neighbor called the police and an officer arrived within minutes. The officer fatally shot both dogs and began administering first aid to Matta-Troncoso, who was airlifted to the hospital with serious injuries.

After the attack, the police took photographs of the front gate at the Thornton residence. The leash was still hanging from the top of the gate and fence where it had been tied. A few months later, the State charged Michael Thornton with four counts of violating Henry County's ordinances pertaining to keeping a vicious animal, failing to provide a collar and display of current vaccination tag for an animal, failing to keep an animal under restraint, and

allowing an animal to become a public nuisance. He pled guilty to all charges. The Mattas now seek to hold the Thorntons' landlord, Tyner, liable for the injuries inflicted by the Thorntons' dogs.

2. The issue before us on certiorari review is whether the Court of Appeals erred by reversing the trial court's grant of summary judgment in favor of Tyner. As an initial matter, the Court of Appeals erred in its analysis of Tyner's motion for summary judgment because it applied OCGA § 51-2-7 to Tyner. By its plain terms, OCGA § 51-2-7 applies only to "[a] person who *owns or keeps* a vicious or dangerous animal." (emphasis supplied).[4] Because there is no contention (let alone evidence) that Tyner, as an out-of-possession landlord, either owned or kept the dogs at issue here, OCGA § 51-2-7 does not apply in the Mattas' case against him. See, e.g., *Oertel v. Chi Psi Fraternity*, 239 Ga. App. 147, 152 (521 SE2d 71) (1999) (affirming summary judgment in favor of national fraternity chapter in dog-bite case because there was no evidence that national chapter owned or kept the dog); see also *Martin v. Johnson-Lemon*, 271 Ga. 120, 123 (516 SE2d 66) (1999) (Court of Appeals

---

[4] The Mattas, in fact, concede in their brief here that their "claims against Tyner are pled under OCGA § 44-7-14 and no claim was made against Tyner pursuant to OCGA § 51-2-7."

erred by implicitly analyzing an action against an out-of-possession landlord under an inapplicable Code section and not OCGA § 44-7-14). Indeed, the Court of Appeals erred when it effectively wrote the phrase "or landlord" into OCGA § 51-2-7 where no such language exists. See *Conley v. Pate*, 305 Ga. 333, 335 n. 3 (825 SE2d 135) (2019) ("[W]e cannot rewrite a statute that 'almost' fits a case to make it apply where it clearly does not."). And that error was significant, because the Court of Appeals relied on OCGA § 51-2-7 to bypass the Mattas' burden to show that Tyner was aware of the dogs' temperament or propensity to do harm (see Division 3 below).[5] By extending the statute to apply not only to pet owners and keepers, but also to landlords, the Court of Appeals erroneously *presumed* Tyner's awareness of the dogs' allegedly vicious propensity. That application of OCGA § 51-2-7, and the analysis that flowed from it, was erroneous, as was the Court of Appeals'

---

[5] Specifically, the Court of Appeals invoked OCGA § 51-2-7 for the proposition that "[i]n proving vicious propensity, it shall be sufficient to show that the animal was required to be at heel or on a leash by an ordinance of a city, county, or consolidated government, and [that] the said animal was at the time of the occurrence not at heel or on a leash," noted that the Mattas' complaint alleged that the pit bulls were "running at large in the neighborhood unrestrained" in violation of Henry County ordinances, and concluded that "the rule requiring evidence that the Thorntons *and Tyner* were aware of the dogs' vicious propensities is not implicated here." *Matta-Troncoso*, 343 Ga. App. at 66-67 (emphasis supplied). See also *Oertel*, 239 Ga. App. at 150 ("If an animal is running at large in violation of a local ordinance when it bites someone, the *owner's knowledge* of its propensity to bite is immaterial.") (emphasis supplied).

conclusion that "the trial court erred in granting summary judgment on the ground that the plaintiffs failed to produce evidence that the Thorntons' dogs had ever displayed any vicious propensities." *Matta-Troncoso*, 343 Ga. App. at 68.

3. Identifying this misguided application of OCGA § 51-2-7 does not, however, resolve the question before us today. That is because the Court of Appeals went on to hold that the grant of summary judgment in Tyner's favor was erroneous even under OCGA § 44-7-14 because "there exists a genuine issue of material fact as to whether [Matta-Troncoso's] injuries arose from the Thorntons' dogs escaping their enclosure and then attacking [Matta-Troncoso] as a result of Tyner's failure to repair the latch on the fence's front gate." *Matta-Troncoso*, 343 Ga. App. at 70. We disagree. Looking to OCGA § 44-7-14 and the record before us, we conclude that there was no genuine issue of material fact as to Tyner's liability because there is no evidence that Tyner was aware that the Thorntons' dogs had any harmful tendencies or propensities, and it therefore was not reasonably foreseeable that Matta-Troncoso's injuries could "aris[e] from" Tyner's failure to repair the broken gate latch.

The Mattas brought a negligence claim against Tyner under OCGA § 44-7-14, a statute that pertains to out-of-possession landlords and governs claims

of negligence for failure to repair. Assuming that OCGA § 44-7-14 can be used to hold out-of-possession landlords liable for injuries resulting from dog bites,[6] it remains "well established that to recover for injuries caused by another's negligence, a plaintiff must show four elements: a duty, a breach of that duty, causation and damages." *Goldstein, Garber & Salama, LLC v. J. B.*, 300 Ga. 840, 841 (797 SE2d 87) (2017) (citation and punctuation omitted).

Here, Tyner had a statutory duty to "keep the premises in repair." OCGA § 44-7-14. Given that Tyner concedes that his knowledge of the broken gate latch must be assumed at the summary judgment stage — and because the record shows that Tyner failed to repair that latch — we assume that Tyner breached his statutory duty in this case. With the first two elements of a negligence claim met, we turn to the third: whether Tyner's failure to repair the broken gate latch caused the injuries Matta-Troncoso suffered.

On this point, Tyner argues (among other things) that his failure to repair the gate latch was not the proximate cause of Matta-Troncoso's injuries because the Thorntons had "superior knowledge to their landlord regarding the dogs' temperament" and because Tyner's failure to repair the latch did not

---

[6] See *Johnston v. Warendh*, 252 Ga. App. 674, 678 (556 SE2d 867) (2001) (noting lack of precedent "which provides for liability for dog bites other than OCGA § 51-2-7 and the premises liability statute, OCGA § 51-3-1").

cause the dogs to escape from the yard. The Mattas, on the other hand, contend that OCGA § 44-7-14 contains no express knowledge requirement, and it is therefore "doubtful that Plaintiffs even need to show evidence of propensity to recover [damages]." According to the Mattas, the statute requires only that "Plaintiffs show evidence that Tyner kn[e]w of the defective condition (that the gate latch was broken and would not contain the dogs) and that the injuries 'arose from' the breach (Tyner's failure to repair)." They also argue that proximate cause "is always a jury question," so summary judgment should not have been granted in Tyner's favor. We again disagree.

"[I]n order to recover for any injuries resulting from the breach of a duty, there must be evidence that the injuries were proximately caused by the breach of the duty." *Goldstein, Garber & Salama, LLC*, 300 Ga. at 841. See also *Jones v. Campbell*, 198 Ga. App. 83, 86 (400 SE2d 364) (1990) (to recover under OCGA § 44-7-14, "a tenant is required to show not only that the landlord breached his statutory duty to keep the premises in repair, but that such breach was the proximate cause of (the) injury") (citation and punctuation omitted). "Inextricably entwined with concepts of negligence and proximate cause is a notion of foreseeability," *City of Richmond Hill v. Maia*, 301 Ga. 257, 258 (800 SE2d 573) (2017) (citation and punctuation omitted), the idea that a defendant

could reasonably foresee that an injury would result from his act or omission. *Smith v. Finch*, 285 Ga. 709, 712 (681 SE2d 147) (2009). Georgia courts have applied that general rule in other cases evaluating negligence claims under OCGA § 44-7-14. See, e.g., *Gale v. North Meadow Assoc. Joint Venture*, 219 Ga. App. 801, 803 (466 SE2d 648) (1995) (affirming summary judgment for landlord under "the landlord's limited liability under OCGA § 44-7-14," because there was no evidence of prior acts from which the landlord could have "reasonably foreseen the attack" by a co-worker) (citation and punctuation omitted) (physical precedent only); *Jones*, 198 Ga. App. at 85 (in case brought under OCGA § 44-7-14, affirming summary judgment for landlord for injuries caused when tenant fell in sinkhole on leased property because "[t]here was no evidence to show that the [landlords], any more than the [tenants], should reasonably have foreseen the creation of such a hole appearing by the continuing erosion of the stream embankment").[7]

---

[7] Cases pertaining to landlord liability for third-party criminal acts are also informative. In those cases, reasonable foreseeability of the risk is essential to proving liability; plaintiffs must show that the landlord had a reason to anticipate or foresee the harmful acts of others based on prior experience with substantially similar types of acts that gave the landlord superior knowledge of the danger posed. See, e.g., *Doe v. Prudential-Bache/A.G. Spanos Realty Partners, L.P.*, 268 Ga. 604, 604-606 (492 SE2d 865) (1997); *Habersham Venture, Ltd. v. Breedlove*, 244 Ga. App. 407, 409-410 (535 SE2d 788) (2000); *Walker v. Sturbridge Partners, Ltd.*, 221 Ga. App. 36, 40 (470 SE2d 738) (1996), 267 Ga. 785 (482 SE2d 339) (1997); *Demarest v. Moore*, 201 Ga. App. 90, 92 (410 SE2d 191) (1991).

Our Court of Appeals, moreover, has acknowledged the role of foreseeability where negligence is alleged in the dog-bite context, including under OCGA § 44-7-14. For example, in affirming summary judgment for the out-of-possession landlord in *Griffiths v. Rowe Properties*, the Court of Appeals held that the plaintiff made no showing of defective construction or repair, but also noted that there was no evidence that the landlord had any knowledge of the tenant's dog's "dangerous propensities or viciousness." 271 Ga. App. 344, 344-345 (609 SE2d 690) (2005). And in *Pickard v. Cook*, the Court of Appeals affirmed a grant of summary judgment in an OCGA § 51-3-1 premises liability case where homeowners were sued after a neighbor's unleashed dog wandered through an open gate into the homeowner's backyard during a child's birthday party and bit a four-year-old child on the face. 223 Ga. App. 595, 595-596 (478 SE2d 432) (1996). Critical to that analysis was that "[p]rior to this incident, to the [homeowners'] knowledge, the dog had shown no vicious propensities nor had he growled at or attacked anyone." Id. at 595-596 (concluding that under OCGA § 51-3-1, the plaintiff was "still required to come forward with evidence of the vicious propensity of the . . . dog in order to show the dangerous condition of which the premises owner had

superior knowledge"). See also *Steagald*, 300 Ga. at 719 (quoting *Sinclair v. Friedlander*, 197 Ga. 797, 800 (30 SE2d 398) (1944), and noting that in the context of OCGA § 51-2-7, unless there is an ordinance permitting the statutory presumption against the dog owner, "knowledge must be shown 'although the Code section (is) silent as to the necessity of its being shown'"); *Custer v. Coward*, 293 Ga. App. 316, 319 (667 SE2d 135) (2008) ("In a typical dog bite case, regardless of whether the cause of action is based on the premises liability statute (OCGA § 51-3-1) or the dangerous animal liability statute (OCGA § 51-2-7)," plaintiffs are required to "produce evidence of the vicious propensity of the dog in order to show that the owner of the premises had superior knowledge of the danger.") (citation and punctuation omitted); *Webb v. Danforth*, 234 Ga. App. 211, 212 (505 SE2d 860) (1998) (although plaintiff's case was based "on the premises liability statute (OCGA § 51-3-1) rather than the dog bite liability statute (OCGA § 51-2-7), [the plaintiff] was still required to produce evidence of the vicious propensity of the dog in order to show the dangerous condition of which the premises owner had superior knowledge").[8]

---

[8] We thus reject Tyner's argument that *Colquitt v. Rowland*, 265 Ga. 905 (463 SE2d 491) (1995), controls here. *Colquitt* stands for the proposition that after a landlord has relinquished possession and control of the premises, the landlord cannot be held liable

Based on the foregoing, the Mattas ultimately must show that the injuries the Thorntons' dogs inflicted on Matta-Troncoso were a reasonably foreseeable result of Tyner's failure to repair the gate latch — and to defeat summary judgment, they must show that there exists a genuine issue of material fact on this point.[9] Important to that analysis is the background principle that Georgia law "does not presume that dogs are vicious or dangerous." *Steagald*, 300 Ga. at 719; see also *Johnston*, 252 Ga. App. at 677-678 ("Traditionally, courts have presumed all dogs to be of a harmless species and hence required proof of the dangerous nature of a particular dog and proof of his owner's knowledge of that individual's deviation from presumptive harmlessness.") (citations omitted). In light of this presumption, plaintiffs

---

under OCGA § 44-7-14 to third parties for injuries caused by a dangerous condition erected by the tenant — in that case, a swimming pool. Id. at 905-906. The Mattas allege that the dangerous condition in this case was the broken gate latch, not the Thorntons' dogs. The record shows that the latch pre-existed Tyner's relinquishment of the property to the Thorntons, and in this procedural posture we assume that Tyner was made aware that it needed to be repaired. That the alleged defect was the broken gate latch, however, does not mean that the dogs are irrelevant to the issue of proximate causation under the facts of this case.

[9] Our conclusion also aligns with our previous explanation that the General Assembly enacted OCGA § 44-7-14 to "limit the potential liability of out-of-possession landlords," and that "any alteration or expansion of an out-of-possession landlord's statutory liability must emanate from the legislature and not from the courts of this State." *Martin*, 271 Ga. at 125. Breach of duty alone is not enough to sustain recovery, *Hudson v. Swain*, 282 Ga. App. 718, 721 (639 SE2d 319) (2006), and we decline to deviate from that maxim — and to judicially expand out-of-possession landlords' liability — here.

seeking to hold out-of-possession landlords liable under OCGA § 44-7-14 for injuries caused by their tenants' dogs must therefore present some evidence showing that the landlord had knowledge of the dogs' tendencies or propensities to do harm in order to demonstrate reasonable foreseeability. That means that here, without some evidence rebutting the presumptive harmlessness of the Thorntons' dogs, the Mattas cannot establish that it was reasonably foreseeable that Matta-Troncoso's injuries would arise from Tyner's failure to repair the gate latch.

Turning to the record in this case, we see no evidence that the Thorntons' dogs had aggressive tendencies or that they had injured anyone in the past, let alone that Tyner knew of those things (if they had indeed been true). To the contrary, the record reveals that in the Mattas' Response to Tyner's Statement of Material Facts as to Which There Is No Genuine Issue To Be Tried, the Mattas *admitted* that "[t]he dogs at issue had never previously bitten or attacked anyone, or shown any signs of aggression."[10] And knowledge of a dog's prior aggressiveness is critical here, because even proof that Tyner knew that the Thorntons kept two pit bulls at the rental house would not be enough

---

[10] Although the Mattas admitted this fact, they also contended that it was "irrelevant."

to establish reasonable foreseeability; indeed, mere knowledge that a dog exists — or even that a particular dog exists — is not sufficient to make an attack reasonably foreseeable. See *Steagald*, 300 Ga. at 719 (because dogs are generally presumed to be harmless, "our courts require actual proof of the dangerous nature of *a particular dog*" and actual proof of the defendant's "knowledge of *the particular dog's* deviation from presumptive harmlessness") (citation and punctuation omitted; emphasis supplied). The Mattas have offered no evidence to meet that standard here.

Presented with a record that contains no evidence that Tyner, as an out-of-possession landlord, had knowledge that his renters owned and kept dogs that previously had demonstrated some kind of aggression, we conclude that there is no evidence to create a jury issue as to whether Matta-Troncoso's injuries were reasonably foreseeable here. And without reasonable foreseeability — a hallmark of proximate cause — there exists no genuine issue of material fact as to the third element of the Mattas' negligence claim: causation. See *Goldstein, Garber & Salama, LLC*, 300 Ga. at 843 (reversing denial of directed verdict and explaining that, in the context of assessing foreseeability of intervening criminal acts, "questions of the foreseeability . . . are usually for the factfinder," but when "the evidence on the matter is plain

and undisputable, it is properly for the court's adjudication"); *Eatmon v. Weeks*, 323 Ga. App. 578, 580 (746 SE2d 886) (2013) ("'[Q]uestions of negligence and diligence and of cause and proximate cause and whose negligence constituted the proximate cause of the plaintiff's injuries are, except in plain, palpable and indisputable cases, solely for the jury, and . . . the courts will decline to decide such questions unless reasonable minds cannot differ as to the conclusions to be reached.'") (citation omitted); see also *Custer*, 293 Ga. App. at 319 (affirming summary judgment for dog owner in dog-bite case because plaintiffs produced no evidence of dog's vicious propensity or owner's knowledge thereof); *Griffiths*, 271 Ga. App. at 345 (affirming summary judgment in favor of leasing agent for apartment complex in dog-bite case because plaintiff made no showing that leasing agent had knowledge of dog's dangerous propensities or viciousness); *Webb*, 234 Ga. App. at 212 (affirming summary judgment in favor of landlord in dog-bite case because plaintiff failed to produce evidence that landowner had superior knowledge of any vicious propensity of dog); *W. D. Enterprises v. Barton*, 218 Ga. App. 857, 858 (463 SE2d 529) (1995) (reversing the denial of a directed verdict where defendant could not reasonably foresee plaintiff's injury by third party because there was no evidence that defendant had notice of third party's "dangerous propensity"

or aggressive behavior); *Rowlette v. Paul*, 219 Ga. App. 597, 599 (466 SE2d 37) (1995) (affirming summary judgment for dog owner because plaintiffs failed to prove an essential element of their case when they provided no evidence that owner knew of the dog's "propensity to inflict harm").

There being no genuine issue of material fact as to whether Tyner's failure to repair the gate latch caused Matta-Troncoso's injuries, summary judgment in Tyner's favor was appropriate. The Court of Appeals' opinion reversing the trial court's grant of summary judgment for Tyner is therefore reversed.

Judgment reversed. All the Justices concur.

Decided March 11, 2019.

Certiorari to the Court of Appeals of Georgia — 343 Ga. App. 63.

Kendall Law Group, Michael C. Kendall, Kimberly D. Mowbray, for appellant.

Millar & Mixon, Bruce R. Millar, James B. Sullivan, for appellees.