**FIFTH DIVISION**
**REESE, P. J.,**
**MARKLE and COLVIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**October 27, 2020**

# In the Court of Appeals of Georgia

A20A1493. LEMONTREE PROPERTIES, LLC v. SAMPLES et al.

REESE, Presiding Judge.

In this dog-bite case, Lemontree Properties, LLC, ("Lemontree") appeals from the trial court's denial of its motion for summary judgment. Lemontree argues that it was an out-of-possession landlord and had no knowledge of the dog's temperament or propensity to do harm, thus absolving Lemontree of liability under OCGA § 44-7-14. We agree, and for the reasons set forth infra, reverse the trial court's denial of Lemontree's motion for summary judgment.

Viewed in the light most favorable to John Samples and Amanda Samples (the "Appellees"),[1] as the nonmoving party below, the record shows the following. Lemontree primarily engages in the rental of residential properties. It leased a home

---

[1] See *Tyner v. Matta-Troncoso*, 305 Ga. 480, 481 (1) (826 SE2d 100) (2019).

in LaFayette to Dallas Smart and Brandy Wyatt in October 2017. The lease provided that Smart and Wyatt were "[n]ot allowed to have pets to occupy the premises except as provided to the lessor in writing." Smart and Wyatt listed three pets on the lease, including a dog named "Jax," and wrote that Jax was a "boxer mix[.]" Lemontree sought additional clarification regarding the pets, and Smart and Wyatt responded that the dogs were "well-behaved."

Shortly after moving in, Wyatt asked Lemontree whether she could put up a chain-link fence in the backyard. Lemontree responded, "Go ahead with the dog fence. Please try to keep it neat. Don't allow any damage to the exterior of the house." After completing the fence, Wyatt emailed pictures to Lemontree, and informed Lemontree that she would "take it down and put down grass seed when we leave." According to Wyatt, the fence was not in a state of disrepair, nor did she communicate any repair requests to Lemontree.

In April 2018, the Appellees' eight-year-old daughter, C. S., was playing in her yard. The Appellees heard screaming, and discovered Jax biting C. S. on the neck. A friend of the Appellees got Jax off of C. S., and Amanda Samples carried C. S. inside. John Samples shot at Jax, and Jax ran down the street. An ambulance brought C. S. to the hospital. She suffered from a concussion, and injuries to her neck, ear, and

2

scalp. Wyatt had left Jax in the backyard while she was at work, and she did not know how Jax had escaped the fenced enclosure. Although Wyatt denied that Jax was a pit bull or pit bull mix, the officer on the scene and an animal control officer opined that Jax was a mixed-breed pit bull.

The Appellees filed a complaint for damages against Wyatt, Smart, and Lemontree, asserting, among other things, claims of negligence and negligence per se on the part of Lemontree. Lemontree filed a motion for summary judgment, which the trial court denied in a summary order after a hearing. We granted Lemontree's application for interlocutory review, and this appeal followed.

"Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. We review a grant or denial of summary judgment de novo and construe the evidence in the light most favorable to the nonmovant."[2] With these guiding principles in mind, we now turn to Lemontree's specific claims of error.

1. Lemontree argues that this case is governed by OCGA § 44-7-14 because it is an out-of-possession landlord. We agree.

---

[2] *9766, LLC v. Dwarf House, Inc.*, 331 Ga. App. 287, 290 (4) (771 SE2d 1) (2015) (citing OCGA § 9-11-56 (c); additional citation and punctuation omitted).

(a) Georgia's dog-bite statute, OCGA § 51-2-7, provides in pertinent part:

A person who owns or keeps a vicious or dangerous animal of any kind and who, by careless management or by allowing the animal to go at liberty, causes injury to another person who does not provoke the injury by his own act may be liable in damages to the person so injured. In proving vicious propensity, it shall be sufficient to show that the animal was required to be at heel or on a leash by an ordinance of a city, county, or consolidated government, and the said animal was at the time of the occurrence not at heel or on a leash.[3]

However, "[b]y its plain terms, OCGA § 51-2-7 applies only to a person who *owns or keeps* a vicious or dangerous animal."[4] In *Tyner*, the plaintiff sought to hold a landlord liable for injuries inflicted by a tenant's dogs.[5] The lease allowed the tenant to keep pets without any restriction, and there was some evidence indicating that the landlord was aware that the tenants had two pit bulls on the property.[6] There was no

---

[3] The parties in the case provided supplemental briefing regarding a recent Georgia Supreme Court decision where the Court held that a plaintiff seeking to recover under this statute must prove scienter in one of two ways: by showing that the owner had knowledge of the animal's vicious propensity, or by showing that the owner knew that the animal was unrestrained at the time of the injury. See *S&S Towing & Recovery v. Charnota*, 309 Ga. 117, 122 (2) (844 SE2d 730) (2020).

[4] *Tyner*, 305 Ga. at 483 (2) (punctuation and footnote omitted).

[5] Id. at 482-483 (1).

[6] Id. at 481-482 (1)

4

evidence that the landlord knew the dogs had any kind of aggressive temperament or propensity.[7] The pit bulls attacked the plaintiff after escaping from the tenant's backyard.[8] The Georgia Supreme Court held that it was error for this Court to analyze the landlord's summary judgment motion under OCGA § 51-2-7, because there was no evidence that the defendant, as an out-of-possession landlord, "owned or kept" the dogs.[9] To hold otherwise would "effectively [write] the phrase 'or landlord' into OCGA § 51-2-7 where no such language exists."[10] The Supreme Court proceeded to analyze the plaintiff's claims under OCGA § 44-7-14, a statute that pertains to out-of-possession landlords and governs claims of negligence for failure to repair.[11]

Applying *Tyner* to the facts of this case, Lemontree, as the landlord, did not own or keep Jax. When "we look to the words of a statute, we attribute to those words their ordinary, logical, and common meanings, unless a clear indication of some other

---

[7] Id. at 482 (1).

[8] Id.

[9] Id. at 483 (2).

[10] Id. (citing *Conley v. Pate*, 305 Ga. 333, 335 (2) n.3 (825 SE2d 135) (2019) ("[W]e cannot rewrite a statute that 'almost' fits a case to make it apply where it clearly does not.").

[11] *Tyner*, 305 Ga. at 484-489 (3).

meaning appears."[12] Here, there was no evidence that Lemontree exercised any custody, care, or control over Jax.[13] Accordingly, OCGA § 51-2-7 is inapplicable because Lemontree was not an owner or keeper under the statute.[14]

(b) We thus analyze the Appellees' claims under OCGA § 44-7-14. Under that statute:

> Having fully parted with possession and the right of possession, the landlord is not responsible to third persons for damages resulting from the negligence or illegal use of the premises by the tenant; provided, however, the landlord is responsible for damages arising from defective construction or for damages arising from the failure to keep the premises in repair.

"Georgia law does not presume that dogs are vicious or dangerous."[15] "In light of this presumption, plaintiffs seeking to hold out-of-possession landlords liable under OCGA § 44-7-14 for injuries caused by their tenants' dogs must therefore

---

[12] *Hendry v. Hendry*, 292 Ga. 1, 2 (1) (734 SE2d 46) (2012) (citation and punctuation omitted).

[13] See Black's Law Dictionary (6th ed) (defining "keeper" as "[a] custodian, manager, or superintendent; one who has the care, custody, or management of any thing or place; one who has or holds possession of anything").

[14] See *Tyner*, 305 Ga. at 483 (2).

[15] *Tyner*, 305 Ga. at 487 (3) (citations and punctuation omitted).

present some evidence showing that the landlord had knowledge of the dogs' tendencies or propensities to do harm in order to demonstrate reasonable foreseeability."[16]

In this case, there was no evidence that Lemontree had knowledge of any aggressive tendencies of Jax.[17] Thus, "we conclude that there is no evidence to create a jury issue as to whether [C. S.]'s injuries were reasonably foreseeable here. And without reasonable foreseeability — a hallmark of proximate cause — there exists no genuine issue of material fact as to . . . causation."[18] Accordingly, the trial court erred in denying Lemontree's motion for summary judgment.[19]

(c) The Appellees argue that *Tyner* is distinguishable because Lemontree is not an out-of-possession landlord. They contend that Lemontree did not fully part with possession because Lemontree reserved discretion over which pets were allowed on the property.

---

[16] Id.

[17] See id. at 488 (3) (even proof that the landlord knew that the tenant kept pit bulls would not be enough to make an attack reasonably foreseeable).

[18] Id.

[19] See id. at 488-489 (3).

A landlord may retain some rights with respect to the property and still maintain its status as an out-of-possession landlord. For example, "[a] landlord's retention of the right to enter, inspect and repair is not inconsistent with a full surrender of possession to the tenant."[20] In this case, Lemontree's right of approval over the tenants' pets "did not constitute such control as would result in [its] partial possession of the leased property."[21]

2. In both their complaint and response to Lemontree's motion for summary judgment, the Appellees asserted that Lemontree was negligent per se for violating LaFayette's ordinances regarding vicious dogs.

LaFayette defines pit bull terriers and mixed pit bulls as vicious animals.[22] Owners of vicious animals are subject to extensive safeguard requirements, which the Appellees characterize as requiring the owner to create an "Alcatraz for dogs." These

---

[20] *Ranwez v. Roberts*, 268 Ga. App. 80, 82 (1) (601 SE2d 449) (2004).

[21] Id.; see also *Cowart v. Crown American Properties*, 258 Ga. App. 21, 24 (3) (572 SE2d 706) (2002) (out-of-possession landlord could retain right to approve the tenant's construction of improvements to the premises); *Godwin v. Olshan*, 161 Ga. App. 35, 36 (2) (288 SE2d 850) (1982) (out-of-possession landlord could retain the right to approve the tenants' insurance policies); *Mills v. Bonanza Intl. Corp.*, 160 Ga. App. 104, 105 (286 SE2d 337) (1981) (out-of-possession landlord could retain the right to approve the tenant's plans for improvements).

[22] See LaFayette Mun. Code § 5-43 (2).

requirements include an enclosure with a secure top and sides buried two feet into the ground or sunken in a concrete pad, a separate perimeter fence surrounding the enclosure, a $500,000 insurance policy, and posted warning signs.[23]

The parties dispute whether Lemontree is Jax's "owner" under LaFayette's ordinances. LaFayette defines an "[o]wner" of an animal as "a person who owns, harbors, or keeps, or knowingly permits an animal to be harbored or kept or has an animal in his care, or who permits an animal to remain on or about his premises for more than five (5) days."[24]

Pretermitting whether Lemontree is an owner under these ordinances,[25] the Appellees cannot proceed under a separate theory of negligence per se because Lemontree is an out-of-possession landlord. "As an out-of-possession landlord, [the landlord's] *only* liability to third persons is that of OCGA § 44-7-14."[26] "[T]he

---

[23] See LaFayette Mun. Code § 5-44.

[24] See LaFayette Mun. Code § 5-21.

[25] Additionally, several documents transmitted in the appellate record, including the lease, emails between Lemontree and Wyatt, and pictures of Jax and the fence, are difficult or impossible to read.

[26] *Griffiths v. Rowe Properties*, 271 Ga. App. 344, 345 (1) (609 SE2d 690) (2005) (emphasis supplied); see also *Martin v. Johnson-Lemon*, 271 Ga. 120, 121 (516 SE2d 66) (1999) ("[B]ecause an out-of-possession landlord's tort liability to

legislature has opted to expressly limit the potential liability of out-of-possession landlords by enacting OCGA § 44-7-14."[27] To allow a negligence per se claim premised on LaFayette's expansive definition of an "owner" and against an out-of-possession landlord would "effectively eviscerate [OCGA §] 44-7-14, and render the limitations imposed therein null and void."[28] The Appellees' citation to a case in which we allowed a negligence per se claim to proceed against a landlord is distinguishable, because that case did not involve third-party claims against an out-of-possession landlord.[29]

For these reasons, we reverse the trial court's denial of Lemontree's motion for summary judgment.

*Judgment reversed. Markle and Colvin, JJ., concur.*

---

third persons is determined under the bases set forth in OCGA § 44-7-14, the Court of Appeals erred by assessing liability in this case under principles not set forth in the statute, including common law principles of ordinary negligence.")

[27] *Martin*, 271 Ga. at 125 (3).

[28] Id.

[29] See *Star Residential, LLC v. Hernandez*, 354 Ga. App. 629, 629, 634-636 (2) (841 SE2d 392) (2020).